William Glenn BULINGTON,
Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 06–04–00135–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Oct. 5, 2005.

Decided Nov. 1, 2005.

Dwight Brannon, Gilmer, for appellant.

Timothy J. Cariker, Asst. Dist. Atty., Gilmer, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice Ross.

William Glenn Bulington, Jr., was convicted of capital murder (killing more than one person, same criminal episode[1]) and sentenced to life imprisonment (the State did not seek the death penalty). Bulington appeals, contending in his first three points of error that the evidence is legally and factually insufficient to support his conviction, that the evidence is legally insufficient to corroborate the testimony of an accomplice witness, and that the trial court erred in failing to include in the jury charge an instruction on the necessity for corroboration of accomplice witness testimony. In his other three points of error, Bulington contends that the jury charge should have included an inverse murder instruction, that he received ineffective assistance of trial counsel, and that the rights of a third party were violated. For the reasons stated below, we overrule these contentions and affirm the judgment.

**Background Facts**

The evidence showed that, around Thanksgiving 2003, Bulington and Ruby Tate were living together at a motel when Tate became acquainted (as a prostitute) with John Reese. Reese invited Bulington and Tate to live with him in a house that he either owned or rented. Bulington was to do some repair work on the house, and

Tate was to keep it clean and prepare the meals. Bulington and Tate apparently agreed to these terms and moved into the house with Reese. This house had a pond behind it. Tate testified that, on the weekend of December 13–14, 2003, Keith Crutcher and L.V. Johnson[2] "showed up" at Reese's house. On the evening of the 14th, they were all "doing drugs" and, at a time when they were all in the kitchen, Bulington and Reese went outside. Bulington returned and told Tate that Reese was leaving. Tate went outside to talk to Reese, and when she returned, she went to the kitchen sink. Crutcher and Johnson were still in the kitchen, but "[Bulington] was nowhere in sight." As Tate was in the kitchen starting the dishwasher, she heard a shot and saw Johnson fall to the floor. Bulington was standing in the doorway less than ten feet away with a .22 rifle in his hands. Crutcher started to run, but Bulington shot him as he ran. Tate then saw Bulington shoot both men again as they lay on the floor. Bulington told Tate if she panicked, or did not help him clean up evidence of the murders, he would kill her also. Tate testified she did as she was told and helped Bulington load the bodies into the back of Crutcher's blue Dodge pickup truck that was parked outside the house. She said Bulington continued to threaten to kill her if she ever said anything about the killings or if she did not help him. Bulington then backed the truck, with Tate's assistance, to the pond behind the house. Bulington took the bodies out of the truck, and Tate helped him

---

1. *See* Tex. Pen.Code Ann. § 19.03(a)(7) (Vernon Supp.2004–2005):
 (a) A person commits an offense if the person commits murder . . . and:
 . . . .
 (7) the person murders more than one person:
 (A) during the same criminal transaction; or

 (B) during different criminal transactions but the murders are committed pursuant to the same scheme or course of conduct.

2. Johnson's identity was apparently unknown at the time the indictment was returned; he is referred to as John Doe in the indictment, as well as in the court's charge to the jury.

load them into a boat. Bulington then took the boat to the middle of the pond, where Tate observed Bulington tie ropes around the necks of the victims. The ropes were attached to what Tate described as "cinder" blocks. She then saw Bulington dump the bodies into the water. Tate testified that, after this, she and Bulington returned to the house, where she cleaned up everything. She said she picked up seven shell casings and gave them to Bulington, who put them in a beer can. Tate testified Bulington drove Crutcher's truck for three or four days before he got rid of it. According to Tate, she and Bulington were planning to get married, and he had promised to give her a ring. She further testified that, at the time Bulington sold Crutcher's truck, "just before Christmas," they had no money, but Bulington gave her a diamond ring on Christmas.

In March 2004, a fisherman observed a body floating on the surface of the pond behind Reese's house. When officers arrived the next day, they found two bodies in the pond, both with ropes around their necks tied to what was described as "hey-dite" blocks. During the ensuing investigation, Johnson's blood was found on floor tiles at the house. A shopping discount card belonging to Crutcher was found at this same location. Investigator Roxanne Warren testified she found approximately six .22 shell casings in a beer can at the scene. Medical examiner Sheila Spotswood, M.D., said she found a total of six bullet wounds in the two victims (four in Crutcher and two in Johnson), recovered fragments of a total of six bullets from the two bodies, and found no evidence of any other wounds or that any other bullets had passed through either body.

In an initial interview, Tate gave Warren three different accounts of what she knew about the killings. Tate testified she first told Warren that Reese killed the two men. She then testified she told Warren she did not know what happened because she was not present. Both Tate and Warren testified Tate finally told Warren the killings occurred as described above. Warren testified that, because of other known facts revealed by the investigation, she did not believe Tate's first two accounts were credible. However, she believed the third version was "truthful." Other relevant background facts of the case will be provided in the appropriate discussions below.

## Sufficiency of the Evidence To Corroborate Accomplice

In his brief before this Court, Bulington presents his first three points of error together. They concern the sufficiency of the evidence to corroborate the testimony of an accomplice witness and the trial court's failure to charge the jury on the necessity for such corroboration. Bulington contends Tate was an accomplice in the killings of Crutcher and Johnson.

■ In our review of the legal sufficiency of the evidence, we employ the standards set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This calls on the reviewing court to view the relevant evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000). In our review, we must evaluate all the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999).

■ In a factual sufficiency review, the appellate court views all the evidence in a neutral light and determines whether the

evidence supporting the verdict is too weak to support the finding of guilt beyond a reasonable doubt or if evidence contrary to the verdict is strong enough that the beyond-a-reasonable-doubt standard could not have been met. *Threadgill v. State*, 146 S.W.3d 654, 664 (Tex.Crim.App.2004) (citing *Zuniga v. State*, 144 S.W.3d 477, 486 (Tex.Crim.App.2004)).

Bulington's first argument under these first three points is that, because there was insufficient corroboration of Tate's testimony, there is insufficient evidence to establish the *corpus delecti*. The *corpus delecti* rule is a rule of evidentiary sufficiency stating, in summary, that an extrajudicial confession of wrongdoing, standing alone, is not enough to support a conviction. There must exist other evidence showing that a crime has been committed. *Williams v. State*, 958 S.W.2d 186, 190 (Tex.Crim.App.1997). It need not be sufficient by itself to prove the offense, but must merely render the commission of the offense more probable than it would otherwise be. *Id.; Rocha v. State*, 16 S.W.3d 1, 4–5 (Tex.Crim.App.2000).[3] Where a defendant is convicted of capital murder, the underlying conduct that elevates the murder to capital murder must also be corroborated. *Emery v. State*, 881 S.W.2d 702, 705 (Tex.Crim.App.1994).

During the months following the deaths of Crutcher and Johnson, Bulington made inculpatory statements to three of the State's witnesses. He told Phil Wheeler, a sometime employer, he had shot one of the victims twice, the other five times, and one was shot in the head. Wheeler characterized Bulington's statements as "bragging." Bulington showed a newspaper article about the murders to Wheeler and told him the article had something to do with Crutcher's blue Dodge truck, which Wheeler saw Bulington driving. Wheeler heard Bulington trying to sell the truck to some of Wheeler's customers. Bulington told Wheeler the truck came from the location of the murders.

Ryan Allen testified Bulington joked with him that, to get rid of a person, one stabs or shoots them and puts them in a pond or lake. Allen also said Bulington showed him a newspaper clipping of the story of the killings and laughed or smirked when telling Allen about it. Allen also saw Bulington driving a blue Dodge truck sometime around the end of 2003. Bulington told Allen he got the truck from someone who owed him money and who had left town. Allen testified Bulington sold this truck to Theresa Robertson, a long-time friend of Allen's wife. Allen testified that, after news of the truck aired on television, Bulington told him to get rid of the truck.

Michael Harris testified that Bulington told Harris he had shot two persons and that Tate had helped clean up after the killings. Bulington told Harris he had considered shooting Tate also.

There was evidence, independent of Bulington's statements to the above witnesses, that showed the commission of two mur-

**3.** *See also Fisher v. State*, 851 S.W.2d 298, 304 (Tex.Crim.App.1993) (victim's body never found, but evidence such as Fisher's steam cleaning his carpet soon after victim's disappearance, discovery of ashes and burned bones near a friend's house that Fisher had recently visited, and recent traces of blood in the garbage disposal and drainpipe of Fisher's house sufficient to corroborate his extrajudicial confession to murdering and mutilating his girlfriend); *Gribble v. State*, 808 S.W.2d 65, 72 (Tex.Crim.App.1990) (Gribble confessed to killing victim and showed police where body was concealed; discovery of victim in uninhabited area wearing only robe, combined with victim's purse in lake and no signs of struggle at home, sufficiently corroborated defendant's admission to kidnapping element of charged capital murder offense).

ders. The two victims were found in the same pond, at the same time. One had been shot two times and the other four times; both were shot with a small caliber weapon. Both victims had "heydite" ("cinder") blocks tied around their necks. Johnson's blood and a shopping card registered to Crutcher were found at the house near where the bodies were discovered; Bulington had been living at that house. Bulington was in possession of Crutcher's truck; Bulington tried to, and did, sell the truck, and was unable to produce a title to it. This evidence corroborates Bulington's statements and renders more probable than not the commission of two murders during the same episode or transaction. *See id.* The evidence is legally and factually sufficient to establish the *corpus delecti.*

We now turn to Bulington's contentions that there was insufficient evidence to corroborate Tate's testimony and that the trial court erred in not instructing the jury on the need for corroboration of an accomplice witness. Article 38.14 provides as follows:

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

TEX.CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005).

Corroboration of the accomplice witness testimony is a statutory requirement imposed by the Legislature, and the Texas Court of Criminal Appeals has declined to "impose legal and factual sufficiency standards upon a review of accomplice witness testimony under Article 38.14." *Cathey v.*

*State,* 992 S.W.2d 460, 462 (Tex.Crim.App. 1999).

The test for determining the sufficiency of the corroboration is to eliminate the accomplice witness testimony from consideration and then determine if there is any other incriminating evidence which "tends to connect" the defendant with the crime. *Meeks v. State,* 135 S.W.3d 104, 112 (Tex.App.-Texarkana 2004, pet. ref'd) (citing *Hernandez v. State,* 939 S.W.2d 173, 176 (Tex.Crim.App.1997); *Reed v. State,* 744 S.W.2d 112, 126 (Tex.Crim.App. 1988)). The nonaccomplice evidence does not need to prove all the elements of the alleged offense. *Meeks,* 135 S.W.3d at 112 (citing *Hernandez,* 939 S.W.2d at 176; *Underwood v. State,* 967 S.W.2d 925, 928 (Tex.App.-Beaumont 1998, pet. ref'd)).

Tate was not an accomplice as a matter of law. An accomplice is one who participates with a defendant before, during, or after the commission of a crime and who acts with the required culpable mental state. *Paredes v. State,* 129 S.W.3d 530, 536 (Tex.Crim.App.2004). This participation must involve some affirmative act that promoted the commission of the offense with which the accused is charged; an accomplice as a matter of law is one who is susceptible to prosecution for the offense with which the accused is charged or a lesser included offense. *Id.* Tate was arrested and charged with tampering with evidence, but not murder or capital murder. Tampering with evidence is not a lesser included offense of capital murder.[4]

Bulington contends Tate was an accomplice as a matter of fact. If evidence presented by the parties is conflicting, and it is not clear whether the

---

4. *Compare* TEX. PEN.CODE ANN. § 37.09 (Vernon 2003) *with* TEX. PEN.CODE ANN. § 19.03 (Vernon Supp.2004–2005).

witness is an accomplice, the trial court must instruct the jury to decide whether the witness was an accomplice. *Id.* An analogous situation was examined by the Austin Court of Appeals in *Navarro v. State,* 863 S.W.2d 191, 202 (Tex.App.-Austin 1993), *pet. ref'd,* 891 S.W.2d 648 (Tex. Crim.App.1994). There, as here, the purported accomplice witness was in the kitchen, with his back turned to the defendant, when he heard a shot fired. The witness assisted Navarro in burying the body and failed to report it. *Navarro,* 863 S.W.2d at 202. Key to the court's analysis was the lack of evidence showing the witness knew that Navarro planned to kill the victim or commit any crime involving deadly force. *Id.* The court held the trial court did not err in refusing to instruct the jury to answer whether the witness was an accomplice as a matter of fact.[5]

In the instant case, the only evidence that can be said to contradict Tate's testimony was the testimony that she gave two other versions of events before the version to which she testified at trial. As discussed above, Warren testified that, when she first interviewed Tate, Tate offered two accounts concerning the killings, neither of which made sense to Warren in light of other things she had learned in her investigation. Tate finally gave a written statement that did not contradict an earlier statement given by Reese, the owner or tenant of the property where the bodies were found and of the house where Johnson's blood was found. In a later interview, Tate gave Warren a note with specifics about the murder scene and Bulington's threats to Tate after the bodies were discovered. Based on this note, and Tate's earlier written statement, Warren and other authorities discovered additional

evidence, including Johnson's blood in the kitchen and the shell casings in a beer can.

There was no evidence contradicting Tate's testimony. More importantly, there was no evidence Tate anticipated Bulington's violent intentions, and there was no evidence Tate and Bulington shared a "common understanding ... that some offense would be committed and that deadly force was contemplated." *Herrick v. State,* 825 S.W.2d 215, 217 (Tex.App.-Houston [1st Dist.] 1992, no pet.). Without evidence Tate knew of Bulington's violent plans, or any contemplation that some crime was to be committed, the trial court was not obliged to instruct the jury on the issue of accomplice as a matter of fact.

■ Even if Tate could be found to have been an accomplice, there is sufficient evidence tending to connect Bulington to the murders. The two bodies were found at the same time, in the same place, both with ropes tied around their necks and connected to "heydite" ("cinder") blocks. Both men died from multiple gunshot wounds, and the medical examiner testified Crutcher had been shot in the back. Johnson's blood was found in the house on the property where the bodies were found. There was also some evidence that, around the time of the murders, Bulington was in possession of a .22 caliber rifle and ammunition for such weapon. Bulington was seen in possession of Crutcher's truck by at least two witnesses. Bulington sold Crutcher's truck to Robertson, who also saw Bulington in the truck before buying it. Robertson testified Bulington told her he could not produce a title to the truck. Bulington told three people he had committed the murders. Bulington told

---

**5.** It is not clear whether Navarro requested an accomplice witness instruction, though from the context, it appears he did and the trial court refused. In the instant case, Bul-

ington did not object to the trial court's charge or request an instruction on the accomplice witness issue. We examine the evidence for egregious harm *infra.*

Wheeler he had shot one victim two times and the other five times. The medical examiner testified both victims had multiple gunshot wounds. And finally, six or seven .22 caliber casings were found at the crime scene.

 Further, Bulington did not object to the trial court's charge. Any error in the omission of an accomplice witness instruction would, therefore, be reversible only if it caused egregious harm. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim. App.1984) (op. on reh'g); *Splawn v. State*, 160 S.W.3d 103, 107 (Tex.App.-Texarkana 2005, no pet.). In determining whether egregious harm occurred, we review the error in light of the entire jury charge, the state of the evidence, including the contested issues and the weight of probative evidence, the argument of counsel, and all other relevant evidence revealed by the record as a whole. *Skinner v. State*, 956 S.W.2d 532, 544 (Tex.Crim.App.1997) (quoting *Almanza*, 686 S.W.2d at 171). Errors resulting in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, or vitally affect a defensive theory. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex.Crim. App.1996) (citing *Almanza*, 686 S.W.2d at 171); *Washington v. State*, 59 S.W.3d 260, 265 (Tex.App.-Texarkana 2001, pet. ref'd). There was sufficient evidence to corroborate Tate's testimony. "Under the egregious harm standard, the omission of an accomplice witness instruction is generally harmless unless the corroborating (non-accomplice) evidence is 'so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive.'" *Herron v. State*, 86 S.W.3d 621, 632 (Tex.Crim.App.2002) (quoting

*Saunders v. State*, 817 S.W.2d 688, 692 (Tex.Crim.App.1991)). The corroborating evidence here is not "so unconvincing." Bulington's first three points of error are overruled.

### Inverse Murder Instruction

. Bulington complains the trial court erred in not giving an inverse murder instruction in its charge to the jury. The charge contained a paragraph instructing the jury that, if it found Bulington killed Johnson but had a reasonable doubt he had killed Crutcher in the same criminal episode, the jury should acquit Bulington of capital murder and find him guilty of the lesser offense of murder. On appeal, Bulington contends the trial court should have included a paragraph instructing in the inverse: that, if the jury found Bulington had killed Crutcher but had a reasonable doubt as to whether Bulington had killed Johnson in the same criminal episode, it must acquit Bulington of capital murder and find him guilty of the lesser offense of murder.[6]

Bulington did not lodge this objection to the trial court. In fact, Bulington objected to the State's request for a charge on the lesser included offense of murder. Bulington was emphatic in his opposition to such lesser included charge. This was clearly a strategic decision on Bulington's part. He argued to the trial court that both parties had conducted voir dire on the assumption that the only charged offense would be capital murder, with its particular range of punishment, and he specifically excepted to any opportunity for the jury to convict based on murder, rather than capital murder. Bulington cannot complain on appeal of denial of a defensive theory that he

---

6. Bulington contends the trial court's failure to sua sponte give such an instruction was a comment on the weight of the evidence, depriving him of due process. He offers no analysis or argument in support of this conclusory statement. This point is inadequately briefed. *See* Tex.R.App. P. 38.1.

eschewed at trial.[7] This point is overruled.[8]

## Ineffective Assistance of Counsel

Bulington contends that, because there was no accomplice witness instruction and no inverse murder instruction in the court's charge to the jury, he received ineffective assistance of counsel.

It is the defendant's burden to prove ineffective assistance of counsel by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim. App.1999). To prevail on a claim of ineffective assistance of counsel, an appellant must show both 1) that counsel's performance was so deficient it was outside the range of reasonable professional judgment and 2) that the appellant was prejudiced by this performance and there is a reasonable probability, one sufficient to undermine confidence in the outcome of the trial, that the result of the trial would have been different. *Id.* at 812. An appellant must demonstrate trial counsel's ineffectiveness in light of the totality of the circumstances. *Id.* at 813. The appellant must overcome the presumption that the challenged action might be considered sound trial strategy. *Id.*

Bulington appears to concede there is no reversible error under this point. He concludes this section of his brief before this Court as follows: "Due to the length of trial, the number of witnesses, the number of exhibits, the complexity of this case, and the omission of only *two* instructions, with the inclusion of one being debatable, any analysis precludes relief under this point." (Citations omitted.)

Nonetheless, because we have held that Tate was not an accomplice and that no accomplice witness instruction was required, and because, as a matter of "sound trial strategy," Bulington objected at trial to the inclusion of any instruction on the lesser offense of murder, we conclude Bulington has not shown he received ineffective assistance of counsel. This point of error is overruled.

## Deprivation of Tate's Rights

Bulington contends that Tate's rights "to remain silent, to receive correct *Miranda*[9] warnings, and to not be badgered by law enforcement during interrogation" were violated by the manner in which the State procured her statements. Nonetheless, as Bulington's own brief before this Court concedes, he does not have standing, under the circumstances of this case, to challenge a third party's alleged deprivation of rights. *See Busby v. State*, 990 S.W.2d 263, 270 (Tex.Crim.App.1999). Bulington's last point of error is overruled.

We affirm the judgment.

---

**7.** See *Litton Indus. Prods., Inc. v. Gammage*, 668 S.W.2d 319, 321–22 (Tex.1984) (party could not move trial court to render judgment on verdict for damages found by jury, then take an inconsistent position on appeal).

**8.** *See also Saunders v. State*, 913 S.W.2d 564, 570–72 (Tex.Crim.App.1995) (en banc) (failure to instruct on one lesser included offense does not per se engender some harm to defendant convicted of greater offense, where court instructs on different lesser included offense).

**9.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).