In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-05-357 CR


____________________



STEVEN WAYNE CUMMINGS, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 217th District Court


Angelina County, Texas


Trial Cause No. CR-24,813






MEMORANDUM OPINION


 A jury convicted appellant Steven Wayne Cummings of theft, and the trial court
assessed punishment at two years of confinement in a state jail facility. In this appeal,
Cummings contends the trial court committed reversible error by failing to sustain his
objection to the arresting officer's testimony regarding post-arrest statements made by
Cummings and a co-defendant without Miranda warnings. We affirm.



Background


 The complainant, R.W., testified that he owns a Honda Foreman four-wheeler, for
which he paid $3,750.00. R.W. generally stored the four-wheeler in a shed in his backyard,
and he described it as covered with pollen, dust, and cobwebs. On July 3, 2004, R.W.
removed the four-wheeler from storage and used it to help his mother move. Upon returning
home that evening, R.W. took the key and left the four-wheeler parked in his driveway. The
next day, R.W. noticed that the four-wheeler was missing, and he called the police. R.W.
denied knowing Cummings or Cummings's brother, Michael, and R.W. stated he had not
given anyone permission to use the four-wheeler. Subsequently, while playing golf with a
sheriff's deputy, R.W. mentioned that his four-wheeler had been stolen, and the deputy told
him one had been found. R.W. then contacted the sheriff's department and recovered the
four-wheeler.

 Sergeant Alan Hill, the patrol supervisor for the Angelina County Sheriff's Office,
testified that on July 4, 2004, he was on patrol with Deputy Constable Butch Parrish.
According to Sergeant Hill, "It was real moist, humid, . . . a lot of fog and dew in the air. 
Everything was damp." At approximately 2:15 a.m., Sergeant Hill and Deputy Parrish saw
Cummings and his brother Michael pushing a four-wheeler down the road, so the officers
decided to approach them. The officers followed the men and saw them push the four-wheeler thirty to fifty feet. Sergeant Hill felt it was odd that the men were pushing a four-wheeler at two o'clock in the morning.

 The officers walked up to the men, and Sergeant Hill saw there was no key in the
ignition, and the four-wheeler was covered with dust and cobwebs. Sergeant Hill testified
Cummings and Michael were sweaty, and they appeared to be nervous. When the officers
questioned them, Cummings and Michael said they had found the four-wheeler "[i]n the ditch
up the road[,]" and they pointed toward where they had found it. The officers walked to the
area where the men indicated they had found the four-wheeler, but did not see tracks
indicating that a four-wheeler had been there. Sergeant Hill continued searching, and he
found "one spot just a little further up where a tire and footprint had got off in the grass."

 While Deputy Parrish stayed with Cummings and Michael, Sergeant Hill went to two
houses in an attempt to find out where the four-wheeler came from, but none of the people
with whom he spoke knew who owned it. Hill explained what happened as follows:

 And I got back, and I asked them again. I asked them, "So, basically, if I leave
my lawn mower on the side of the road, it's okay for you to come take it?" He
said, "No, sir, it's not." I said, "So it's not all right for you to take this four-wheeler?" He said, "No, sir."


Sergeant Hill then arrested Cummings and Michael. Sergeant Hill characterized the men's
demeanor as apologetic.

 When asked whether "they" made any statements that were not in response to
custodial interrogation, Sergeant Hill did not distinguish between the two brothers. Sergeant
Hill testified that "[h]e told me he was sorry; they was [sic] thinking about taking it back
when we pulled up on them." Sergeant Hill also testified that "they" stated they planned to
take the four-wheeler to a friend's house and load it onto the friend's truck. (1) Hill testified
he was not questioning Cummings, but was explaining to Cummings why he was under
arrest. (2) Sergeant Hill later clarified that when Michael told him they planned to take the
four-wheeler to a friend's house, Michael was responding to a direct question from Sergeant
Hill. However, Cummings volunteered his apology for taking the four-wheeler. According
to Sergeant Hill, Cummings and Michael never said they were merely moving the four-wheeler out of the road, and they did not deny their culpability. Sergeant Hill testified that
his encounter with Cummings and Michael was recorded on videotape, but the tape was
recycled before trial.


 Deputy Floyd W. "Butch" Parrish testified that in July of 2004, he was a volunteer
deputy constable. At approximately 2:30 a.m. on July 4, 2004, Deputy Parrish was patrolling
with Sergeant Alan Hill. Deputy Parrish described the weather as warm and foggy, with
heavy dew. The officers observed Cummings and Michael pushing a four-wheeler. Deputy
Parrish estimated that the officers saw the men push the four-wheeler approximately thirty
feet before stopping them. Officer Hill then questioned the men. Deputy Parrish stated the
four-wheeler was dusty, covered with spider webs, and had "granddaddy long-legs coming
out of [the] tail pipes." The key was not in the ignition. According to Deputy Parrish,
Cummings "stated they found the four-wheeler in the ditch, and they were just pushing it out
of the ditch." Deputy Parrish testified that Cummings and Michael "were sweating very
profusely."

 According to Deputy Parrish, Sergeant Hill walked up the road to see where the men
might have pushed the four-wheeler out of the ditch, while Deputy Parrish remained with
Cummings and Michael. Deputy Parrish testified Sergeant Hill did not find any indication
that the four-wheeler had been in a ditch, and Sergeant Hill then arrested Cummings and
Michael. Sergeant Hill knocked on the doors of two residences in an attempt to find the
owner of the four-wheeler. Deputy Parrish testified that "[t]hey just kept telling me they
found it in the ditch and they pushed it up there to put it in a truck and carry it somewhere." 
When Officer Hill returned and arrested Cummings and Michael, Deputy Parrish testified
that "they" apologized for what they did. (3)

 Cummings testified that when the officers arrived and asked questions, he told the
officers, "we'd come around the corner and noticed this four-wheeler was here in the road
here to see [sic] if anybody might be hurt or what was going on." Cummings denied telling
the officers he had found the four-wheeler in a ditch. Cummings testified that he and
Michael were not pushing the four-wheeler, and "[w]e never laid our hands on it." 
Cummings testified he told Officer Hill he was "sorry for ever coming down there."
Cummings denied saying anything about taking the four-wheeler back or hearing Michael
do so. Cummings also denied seeing dew that night. He indicated the officers were lying
when they stated that he told them he was thinking about returning the four-wheeler.

Cummings's Issue


 In his sole issue, Cummings contends the trial court committed reversible error by
admitting the arresting officer's testimony regarding post-arrest statements made by
Cummings and Michael (4) without Miranda warnings. We review the trial court's decision to
admit the evidence under an abuse of discretion standard. Green v. State, 934 S.W.2d 92,
101-02 (Tex. Crim. App. 1996). The post-arrest warnings required by Miranda come into
play when the authorities subject an individual to custodial interrogation. Miranda v.
Arizona, 384 U.S. 436, 478-79, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Rhode Island v. Innis,
446 U.S. 291, 300-01, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). For the Miranda safeguards
to apply, Cummings must have been in custody and the police must have interrogated him,
either by express questioning or its functional equivalent. See Jones v. State, 795 S.W.2d
171, 174 (Tex. Crim. App. 1990); Morris v. State, 897 S.W.2d 528, 531 (Tex. App.--El Paso
1995, no pet.). An offhand remark by police personnel, not designed to elicit a response,
does not constitute custodial interrogation. Innis, 446 U.S. at 302-03. "'Interrogation,' as
conceptualized in the Miranda opinion, must reflect a measure of compulsion above and
beyond that inherent in custody itself." Innis, 446 U.S. at 300. Likewise, article 38.22 of the
Texas Code of Criminal Procedure applies only to statements made during custodial
interrogation. Tex. Code Crim. Proc. Ann. art. 38.22, §§ 2, 5 (Vernon 2005).

 Initially, we note that Cummings's issue overlooks a crucial point: the record on
appeal is silent as to whether Cummings and Michael received Miranda warnings. Sergeant
Hill described his arrest of Cummings and Michael, but he did not testify as to whether or
not he gave them Miranda warnings. Deputy Parrish did not testify as to whether Sergeant
Hill gave Miranda warnings to Cummings and Michael. Cummings did not testify regarding
whether he received Miranda warnings. Cummings does not point us to any evidence in the
record indicating that Miranda warnings were not given, and we find none. However, the
State briefs the case as though no Miranda warnings were given.

 We will assume, arguendo, the truth of Cummings's assertion that neither he nor
Michael received Miranda warnings. Cummings has the burden to establish that his
statement was the product of custodial interrogation. See Wilkerson v. State, 173 S.W.3d
521, 532 (Tex. Crim. App. 2005). Sergeant Hill testified that Cummings's statement - - - that
"he was sorry; they was [sic] thinking about taking it back when we pulled up on them" - - -
was not made in response to interrogation. Rather, Cummings volunteered the statement in
response to Sergeant Hill's statement explaining why Sergeant Hill was arresting Cummings. 
We find that Sergeant Hill's statement to Cummings was not intended to elicit a response. 
See Innis, 446 U.S. at 302-03. Therefore, it was not an abuse of discretion to allow that
testimony into evidence. In addition, a defendant lacks standing to complain of the
deprivation of his co-defendant's constitutional rights. See Bulington v. State, 179 S.W.3d
223, 232 (Tex. App.--Texarkana 2005, no pet.) (citing Busby v. State, 990 S.W.2d 263, 270
(Tex. Crim. App. 1999)). Accordingly, Cummings lacks standing to complain that Michael
did not receive Miranda warnings before being questioned. See Bulington, 179 S.W.3d at
232. Furthermore, we have determined that the trial court properly admitted Sergeant Hill's
testimony regarding Cummings's statement apologizing for taking the four-wheeler and
indicating he intended to return it. See Innis, 446 U.S. at 302-03. Therefore, any error
resulting from the admission of Sergeant Hill's testimony about Michael's statement was
harmless. See Tex. R. App. P. 44.2(a), (b). We overrule Cummings's sole issue and affirm
the trial court's judgment.

 AFFIRMED. 

 


 

 STEVE McKEITHEN

 Chief Justice




Submitted on March 30, 2006

Opinion Delivered July 26, 2006

Do Not Publish


Before McKeithen, C.J., Kreger and Horton, JJ.



 

 
1. Cummings did not object that any of Sergeant Hill's testimony was insufficiently
specific as to whether Cummings, Michael, or both made various post-arrest statements. See
Tex. R. App. P. 33.1(a)(1)(A).
2. Cummings's counsel objected to Sergeant Hill's testimony regarding the statements
on the grounds that they were made in response to custodial interrogation, and the trial court
overruled the objection.
3. Cummings did not object that Deputy Parrish's testimony was insufficiently specific
as to whether Cummings, Michael, or both apologized. 
4. Cummings's only complaint regarding the testimony about Michael's statements is
that Michael did not receive Miranda warnings.