

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-11-00127-CV
_____

## IN THE MATTER OF THE MARRIAGE OF ELEANOR FOX DAVIS
## AND WILLIAM BARNES DAVIS

On Appeal from the 402nd Judicial District Court
Wood County, Texas
Trial Court No. 2011-062

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss
Concurring Opinion by Justice Moseley

O P I N I O N

Based on a Rule 11 agreement reached in a spirited divorce case between William Barnes Davis and Eleanor Fox Davis, a receiver was appointed to preserve and sell the assets of Fox Crest Farm, LLC—owned and managed solely and informally by William and Eleanor.

The LLC owns and operates a horse farm "intended to be a manager-managed LLC with the two named managers being" Eleanor and William. According to a trial brief filed by William, "[t]he parties did not hold any LLC meetings, did not engage in LLC voting, and did not observe any LLC formalities." William complains that the trial court erred: (1) "when it did not take evidence of the qualifications of a receiver or require that the receiver take an oath of office before performing his duties as a receiver"; (2) "by issuing a nunc pro tunc order appointing a receiver that makes substantive changes to the previous order, places property of a non-party . . . under receivership, and expands the power of the receiver beyond the Rule 11 agreement"; and (3) "by placing property owned by a non-party limited liability company under a receivership to be sold." We affirm the trial court's order because (1) William did not preserve his complaints about the receiver's authority, (2) William did not preserve his complaint about the order of November 28, and (3) the Rule 11 agreement by William and Eleanor, the members and managers of the LLC, is sufficient to bind the LLC.

Eleanor filed her original petition for divorce January 31, 2011, and requested temporary orders prohibiting her exclusion "from managing and operating the business known as Fox Crest Farm, LLC . . . as a profitable business and selling assets of the business, including but not limited to land and animals as necessary to manage same."

2

On June 23, 2011, William filed a motion for temporary orders, stating:

> 1.      Petitioner and Respondent have been unable to agree on the temporary use and possession of their community property while this case is pending.
>
> 2.      There are animals belonging to the business owned by the parties that are in danger of going unfed and uncared for that are in the control of Petitioner. Temporary orders are needed to resolve this immediate problem and other issues.

Eleanor responded by filing a motion for temporary orders, claiming:

> Petitioner is unable to continue to make mortgage payments on Fox Crest Farm, LLC property due to lack of income or any financial resources. Respondent abandoned Fox Crest Farm, LLC property in late January 2011, leaving over 50 horses for Petitioner to take care of without providing any financial means for feeding or caring for the animals . . . . Petitioner requests that she be awarded exclusive use and possession of the land and improvements comprising of 215 acres, more or less in Wood County, Texas, and known as Fox Crest Farm, LLC pending sale and that Craig English of Century 21 First Group, a licensed real estate broker with whom the property is listed, be appointed receiver of that property and empowered to sell it, pay off any liens and the expenses of sale, and deposit the net proceeds realized as directed by the Court.

On September 8, 2011, after a Rule 11 agreement had been discussed, the trial court held a hearing on the temporary orders and announced that it would appoint Reneau Anders as a receiver. William testified, "Reneau Anders and I have a conflict that we've had for some time. If you have somebody else, I would appreciate it if you would recommend them." The court explained, "[H]e's not going to be dealing with you. He's just going to be selling the property. He's reporting to the Court and he's the court's appointee . . . . He's served as a receiver under court-appointment in the past and that's who I'm appointing." William "was agreeable except

3

for Reneau Anders." The court clarified, "If y'all agree on everything and you don't need to be back here, that's fine, just let everybody know."

A Rule 11 agreement, which was entered into September 8, was filed with the court September 15, 2011. In that agreement, William and Eleanor agreed that:

> Petitioner shall have the exclusive and private use and possession of the following property while this case is pending: 1336 FM 69, Quitman, TX 75783.
>
> Reneau Anders, Quitman Realty, a licensed real estate broker is hereby appointed receiver of the property currently listed with Craig English, Century 21 and empowered to sell it, pay off any liens and the expenses of sale, and deposit the net proceeds realized as directed by the Court . . . .

On September 30, 2011, William filed an amended counter-petition for divorce asserting breach of fiduciary duty claims and listing Eleanor "[a]s an equal partner in Fox Crest, PLLC." The trial court held a hearing on this date to discuss the motions for temporary orders. While there was no complaint as to Anders' qualification to be appointed as receiver, William's counsel argued:

> As far as receivership, I understand—understood you ordered a receiver to sell the property. . . . But in the order that he drew up, it says to manage, dispose and or— all of the business is in the L.L.C., the corporation, the joint two-member corporation, so this is not your average divorce where everything is . . . community property. This is an actual corporation where much of the land was deeded into the corporation as well as all of the horses were owned by this corporation. . . .

Because William "disagree[d] with the ordering of the appointment of the receiver to manage the entire corporation," the trial court entered an order appointing receiver based on the Rule 11 agreement which omitted language giving the receiver authority to manage and control the property of the LLC.

4

The September 30, 2011, order appointing receiver found that "proper grounds exist[ed] for the immediate appointment of a receiver" and that "Reneau Anders of Quitman Realty is qualified to serve as Receiver." Consequently, the court appointed him to take "charge and possession" of the land currently listed by English and authorized him "to dispose of the property as he sees fit in his sole discretion." The listed real property consisted of three parcels of land, including "11 acres and the five acres that belong[ed]" to the LLC, but the order did not indicate the LLC's ownership in the two parcels. Anders was directed to "report to the Judge as to the price listed on the property, any reduction in listing price, sales price or any other matters involving the sale of the property." On October 19, 2011, the receiver's report of sale was filed with a motion to confirm sale of the real property for a total sales price of $850,000.00 "on the terms and conditions set forth in residential earnest money contract," which listed Paul and Jennifer Dwyer as the prospective purchasers. Anders added his "opinion that this sale represented the highest and best sales price readily obtainable."

In a November 10, 2011, hearing, William complained that the receiver had never contacted him to inquire about his interest in purchasing the property, and testified that he would be willing to pay more for the property than the price offered by the Dwyers. Noting that William had knowledge that the receiver was appointed to sell the property, and could have made an offer, the trial court approved Anders' report and entered an order confirming sale.

On November 28, 2011, the LLC interplead "all assets of that entity into court for dissolution of that business entity and disposition of its assets and liabilities." That day, William filed a motion for reconsideration of the receiver's report, claiming that Anders had received an

5

offer $100,000.00 higher than the Dwyers' offer and that both parties wanted to accept the offer. Eleanor opposed William's motion for reconsideration, taking issue that "the 'purchaser' presented in the 'new bid' [was] represented by Respondent W. Barnes Davis, in that it [wa]s [William's] telephone number and mailing address that [wa]s being used by the purchaser," the alleged business entity did not exist in Texas, and that the earnest money check was made out to a different entity and could not be cashed.

At a November 28 hearing on this motion, it became clear that this offer was engineered by William. Anders testified a company called Dallas Atlanta Investments, LLC, made an offer through its president, Mike Malone, that Malone was to pay $950,000.00 for the property and that William was to pay Malone back. Malone testified he was William's friend. The issue of disposition of the LLC's property was raised also at this November 28 hearing. While acknowledging that Eleanor "just interplead this corporation today, this afternoon," William's counsel argued that the LLC was required to be a named party to the divorce proceeding:

> What we have is an appointed receiver without a party before the Court. Fox Crest Farms is a party. They were the owners free and clear of two of the pieces of property that were in this last receiver's report, and so I'm objecting that the property of a person or corporation that was not before this court was placed in the receivership and the receiver sold property of a corporation that was not before this court.

Eleanor's counsel suggested at this hearing that a "nunc pro tunc" was in order "to request the authority for the receiver to sell the two pieces of Fox Crest Farms that are in the L.L.C., titled in the L.L.C., . . . and at the insistence of the title company to, correct the

description, to match the description they have in their records." An order, titled "nunc pro tunc," was entered November 28.

William gave notice of interlocutory appeal[1] and filed a motion to stay completion of the sale pending the appeal, arguing that the court did not have personal jurisdiction to include the LLC's property in the receivership. During a supersedeas bond[2] hearing on November 30, 2011, the trial court opined:

> I am aware that the entire, entire ownership of that entity, the L.L.C., committed themselves in September to this court, that they wanted this court to appoint a receiver to sell the specific properties that are owned either in the name of the parties themselves or in the name of the L.L.C. That entire property was before this court and everybody who owned any interest in it was before this court and took this court's time and told this court this is what it wanted done, and the court appointed that receiver in good faith and the parties knew that the receiver

[1]On January 3, 2012, William filed an amended notice of interlocutory appeal, raising an issue as to the receiver's qualification and need for an oath for the first time. Anders filed a written oath January 5, 2012. At a hearing held on the same date, William argued that Anders never qualified because he was not sworn, while Eleanor argued that Anders' "prior report was given under oath in open court." Anders testified he had served as receiver in that court on other cases, and the trial court overruled "the objection to Mr. Anders serving as a receiver in this case." William filed another "motion for declaration that Anders never qualified" because there was no evidence that Anders was a resident and voter. He then filed a second notice of interlocutory appeal January 19, 2012, raising the issue that the November 28, 2011, "nunc pro tunc" order was void because it made substantive changes.

We have appellate jurisdiction over orders appointing receivers in divorce proceedings. TEX. FAM. CODE ANN. § 6.507 (West 2006). Where the appellate timetable can be extended in certain circumstances in appeals from judgments, "[i]n an accelerated appeal, the notice of appeal must be filed within 20 days after the judgment or order is signed." TEX. R. APP. P. 26.1(b). Without a timely filed notice of appeal, this Court lacks jurisdiction to decide the issues raised on the merits. TEX. R. APP. P. 25.1(b).

The original order appointing Anders as receiver was entered September 30, 2011. Notice of appeal was not filed until November 29, 2011. Thus, we would not have jurisdiction to consider complaints concerning just the September 30, 2011, order. The trial court, however, on November 28, 2011, entered "temporary orders appointing receiver based on Rule 11 agreement nunc pro tunc," which gave Anders power to manage and control the LLC property for the first time, specified the LLC's ownership of parcels of land comprising the farm, and clarified the physical description of the property. We treat this appeal as being from the November 28, 2011, order.

[2]The trial court set a supersedeas bond "in the amount of $850,000.00, which is what the community estate stands to lose in the event this goes forward and that the sale is lost and the land is foreclosed, which is all possibilities out there as a consequence of the action Mr. Davis has chosen to take, contrary to what he told this court he wanted to do back in September." After the title company indicated it would not proceed with closing if the property owned by the LLC was included, Anders amended the existing contract with the Dwyers to exclude the land titled in the name of the LLC, reducing the purchase price to $822,500.00.

7

had been appointed and it was the receiver that the parties asked for this court to appoint in that Rule 11 agreement.

*(1)     William Did Not Preserve His Complaints about the Receiver's Authority*

Section 64.002(c) of the Texas Civil Practice and Remedies Code allows for the "appointment of a receiver over all or part of the marital estate" in a divorce proceeding. TEX. CIV. PRAC. & REM. CODE ANN. § 64.002 (West 2008). "The rules of equity govern all matters relating to the appointment, powers, duties, and liabilities of a receiver and to the powers of a court regarding a receiver," unless inconsistent with other law. TEX. CIV. PRAC. & REM. CODE ANN. § 64.004 (West 2008). Section 6.502 of the Texas Family Code also allows for the appointment of a receiver "for the preservation and protection of the property of the parties." TEX. FAM. CODE ANN. § 6.502(a)(5) (West 2006). A trial court's order under Section 6.502 cannot be "disturbed unless there is a clear showing of an abuse of discretion." *Norem v. Norem*, 105 S.W.3d 213, 216 (Tex. App.—Dallas 2003, no pet.) (citing *Sparr v. Sparr*, 596 S.W.2d 164, 165–66 (Tex. App.—Texarkana 1980, no writ)).

Although William "is not in dissatisfaction with actions of the receiver," and does not question the need for a receiver in this case, he complains that the court erred when it did not require Anders to take an oath before performing his duties.[3] Section 64.022 of the Texas Civil Practice and Remedies Code instructs that, "[b]efore a person assumes the duties of a receiver, he must be sworn to perform the duties faithfully." TEX. CIV. PRAC. & REM. CODE ANN. § 64.022 (West 2008). However, "[a]s a prerequisite to presenting a complaint for appellate review, the

---

[3]William's complaint is that the receiver negotiated the contract of sale before taking the oath of office. While that is true, it is also true that the contract has been modified and confirmed by the trial court after the oath was taken.

record must show that: (1) the complaint was made to the trial court by a timely request, objection, or motion . . . ." TEX. R. APP. P. 33.1(a)(1). William first made this complaint known to the trial court January 3, 2012, well after Anders' appointment was made September 30, 2011. The complaint was untimely made. Accordingly, William failed to preserve this issue for our review. *See Bishop v. Smith*, No. 09-08-00185-CV, 2009 WL 5205362, at \*5 (Tex. App.—Beaumont Dec. 31, 2009, no pet.) (mem. op.).

Next, William argues that Anders was not proven to be qualified under Section 64.021, which states:

> (a) To be appointed as a receiver for property that is located entirely or partly in this state, a person must:
>
> (1) be a citizen and qualified voter of this state at the time of appointment; and
>
> (2) not be a party, attorney, or other person interested in the action for appointment of a receiver.
>
> (b) The appointment of a receiver who is disqualified under Subsection (a)(1) is void as to property in this state.

TEX. CIV. PRAC. & REM. CODE ANN. § 64.021 (West 2008).

Anders had previously served as a receiver for this trial court, which specifically found here that he was qualified. Additionally, both parties asked for the trial court to appoint Anders, and the argument claiming no evidence of his qualification was not raised until January 19, 2012, in a second notice of appeal filed in our separate cause number 06-12-00019-CV, well after the September 30, 2011, appointment. There is no suggestion that Anders was actually disqualified under subsection (a)(1). Further, to allow a challenge to the agreed appointment would

9

constitute permission for William to take a position contrary to his position before the trial court. This is a practice we will not allow. *See Bulington v. State*, 179 S.W.3d 223, 232 n.7 (Tex. App.—Texarkana 2005, no pet.) (citing *Litton Indus. Prod. v. Gammage*, 668 S.W.2d 319, 321–23 (Tex. 1984)); *Nebgen v. Minn. Mining & Mfg. Co.*, 898 S.W.2d 363, 366 (Tex. App.—San Antonio 1995, writ denied); *Stewart & Stevenson Servs. v. Enserve*, *Inc.*, 719 S.W.2d 337, 341 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.).

Consequently, we find William failed to preserve his issue concerning Anders' qualifications. *See Logan v. Mauk*, 126 S.W.2d 513, 515 (Tex. Civ. App.—Amarillo 1939, writ dism'd) ("The record shows that the order appointing the receiver was based on an agreement made by all the parties and entered by their consent . . . and in their motion to set aside the order neither accident, fraud, mistake or collusion is urged. It is not asserted that any change in the facts or conditions had occurred since the agreement to enter the order was made. The agreement was . . . entered of record and appellant may not complain thereof."). *But see Pena v. Sell*, 760 S.W.2d 811, 812 (Tex. App.—Amarillo 1998, no writ).

William's complaints with regard to Anders' qualifications are overruled.[4]

---

[4]William suggests, for the first time on appeal, that Anders became an interested party when he "negotiated a contract with a third party and took actions at great length to uphold and consummate the contract he had negotiated before he took the oath." Without citation to the record, William continues that "[o]ne of the reasons he had given to uphold the contract was that he could be held liable if he did not follow through with the contract. Therefore, he became greatly interested in the outcome of this case, especially if he did not have judicial immunity for his actions before taking the oath of office." The receiver's actions were strictly in accordance with the trial court's orders.

*(2)*     *William Did Not Preserve His Complaint about the Order of November 28*

William states that the trial court erred by issuing the November 28 order, which made substantive changes to the previous order. He argues that the trial court was without plenary power to make substantive changes. But, because this was an interlocutory appeal, the trial court retained power to modify its September 30 order. TEX. R. APP. P. 29.5.

William next complains that the November 28 order expanded the receiver's power beyond the Rule 11 agreement. In this interlocutory appeal, issues were to be timely raised, yet William failed to raise with the trial court the new issues urged here. In fact, they were first raised January 19, 2012.[5] Consequently, we decline to address this unpreserved issue. *See* TEX. R. APP. P. 33.1.

*(3)*     *The Rule 11 Agreement by William and Eleanor, the Members and Managers of the LLC, Is Sufficient to Bind the LLC*

William also complains that the order placed the LLC's property into receivership and that the trial court erred in doing so because it did not have personal jurisdiction over the LLC. William asserts that the LLC was required to be a named party in the divorce proceeding. The LLC was co-owned and managed by Eleanor and William in equal shares. The LLC is the property of the parties—Eleanor and William. The LLC organizational documents state that the LLC is to be managed entirely by its two managers, Eleanor and William. In his trial brief to the court, William stated that the LLC was formed after the marriage. He also stated, "In the case at bar, the members of the LLC operated more as active partners and not in strict compliance with

---

[5]There is no question concerning our jurisdiction over this appeal, as an earlier notice of appeal provided that jurisdiction. This issue concerns only newly urged complaints.

11

the corporate form. . . . [T]he members did not observe any formalities. . . . The business was operated more as a partnership. . . .

In his motion for temporary orders, William asked the trial court to issue temporary orders for preservation of the assets owned by the LLC. Both Eleanor and William, in the Rule 11 agreement, specifically agreed to the appointment of Anders to sell property owned by the LLC.[6] "One who invokes the jurisdiction of the court to appoint a receiver of his property[7] cannot thereafter question the validity of the appointment for want of jurisdiction." *B & W Cattle Co. v. First Nat'l Bank of Hereford*, 692 S.W.2d 946, 951 (Tex. App.—Amarillo 1985, no writ); *see Cross v. Cross*, 738 S.W.2d 86, 87–88 (Tex. App.—Corpus Christi 1987, writ dism'd w.o.j.). We overrule this point of error.

We affirm the trial court's order.


Josh R. Morriss, III
Chief Justice

---

[6]It is not unprecedented for owners of business entities to enter into Rule 11 agreements that address their rights within the corporate environment. *See Pettus v. Pettus*, No. 02-04-00133-CV, 2004 WL 2984949 (Tex. App.—Fort Worth Dec. 23, 2004, no pet.) (mem. op.) (agreement for arbitration of authority of parties as officers in closely held corporation); *Robinson v. West*, No. 11-03-00028-CV, 2004 WL 178586 (Tex. App.—Eastland Jan. 30, 2004) (mem. op.), *rev'd on other grounds*, 180 S.W.3d 575 (Tex. 2005) (agreement by shareholders to dissolve corporation).

[7]While, properly speaking, the property owned by the LLC is not property belonging to William and Eleanor, it is and was property over which William and Eleanor enjoy complete authority, as the members and managers of the LLC. We believe the rule stated in *B & W Cattle* should apply equally here, concerning property over which the parties to the Rule 11 agreement enjoyed complete control and agreed to the action taken by the trial court, especially given that they exercised that control over it informally as a matter of course.

12

CONCURRING OPINION

A trial court is statutorily authorized to appoint "a receiver for the preservation and protection of the property of the parties." TEX. FAM. CODE ANN. § 6.502(a)(5) (West 2006). In this case, two parcels of land subject to the court's receivership belonged to Fox Crest Farm, LLC, not to the two parties to the action for divorce (despite the fact that the two parties to the divorce are the sole owners of the LLC). Generally, a business entity exists as a separate legal entity and "is not a party to a lawsuit without being so named." *Blackard v. Fairview Farms Land Co.*, 346 S.W.3d 861, 866 (Tex. App.—Dallas 2011, pet. granted) (citing *Reynolds v. Haws*, 741 S.W.2d 582, 589 (Tex. App.—Fort Worth 1987, writ denied)). Although William filed a brief stating that the parties "did not observe any LLC formalities" in its prior dealings, that informality does not forever bar a future insistence that obedience to the governing documents of the entity are required. This past failure to observe the formalities specified in the governing documents of the LLC was practiced with the mutual consent of the two managers. The Rule 11 agreement wherein the LLC's assets were to be turned over to a receiver was not signed by William and Eleanor in their official capacities as sole managers of the LLC but, rather, in the individual capacities of the two persons who were the parties to the divorce action. At the time of the entry of the original order appointing a receiver for the assets of the LLC, the LLC had neither been made a party to the lawsuit, nor is there any pleading that raises any kind of estoppel of the individuals as managers of the LLC.

The majority seems to hold that the acquiescence of the two individuals who were the sole managers of the LLC in the appointment of a receiver of the assets of the LLC is tantamount

13

to their consent in their capacities as the sole managers of the LLC. I disagree and maintain that (1) the past mutual and agreed conduct of the managers of an LLC to conduct the business of that entity informally does not necessarily commit them to forever abandon the niceties and requirements of the governing requirements in the future, and (2) an agreement in the capacity of an individual would not also unwillingly bind that same person in its capacity as the manager of an LLC. Since the LLC had not been made a party to the lawsuit at the time of the September 30, 2011, order appointing a receiver over its assets and since there were no pleadings to allege that the managers of the LLC were estopped to deny that they had acquiesced in their capacities as managers, I believe that the trial court was without authority to enter that order dealing with the assets of the LLC.

There was a subsequent order entered November 28, 2011 (after the LLC had been made a party to the lawsuit), which was entered nunc pro tunc, reaffirming the entry of the order appointing a receiver of its assets. Because the LLC had been made a party to the divorce before the trial court's November 28, 2011, "nunc pro tunc" order and prior to any sale of the LLC property, I concur in the result reached by the majority.

Bailey C. Moseley
Justice

Date Submitted: May 23, 2012
Date Decided: June 12, 2012

14