**DAYTON REAVIS CORPORATION, et al., Appellants,**

v.

**RAMPART CAPITAL CORPORATION, et al., Appellees.**

**No. 10-97-249-CV.**

Court of Appeals of Texas, Waco.

April 29, 1998.

Rehearing Overruled May 27, 1998.

---

James E. Studensky, Waco, for Appellant.

Jeffrey J. Brookner & Stephen G. Scholl, Hirsch & Westheimer, P.C., Houston, for Appellee.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

We affirm a conditional interlocutory order appointing a receiver to take control of certain property that is the subject of disputed claims.

## THE DISPUTE

Rampart Capital Corporation (Rampart) owned a note dated May 30, 1985, signed by Cameron Henderson Oil Company, Inc. (CHOC), payable to the First National Bank of Wortham. Rampart believed that it held a deed of trust to secure the note, covering three lots in Mexia to which Dayton Reavis Corporation (Dayton Reavis) held title. When Rampart posted the property for foreclosure, Dayton Reavis and CHOC sought injunctive relief to stop that course of action. The court issued an injunction prohibiting Rampart from foreclosing. Rampart filed a counterclaim asserting, among other things, its promissory note against CHOC and asking for a declaratory judgment that its lien extended to the property in the hands of Dayton Reavis. To forestall Dayton Reavis from disposing of the property or its being lost to taxes or destroyed, Rampart sought to have a receiver appointed. In a hearing that occurred over three days ending on July 23, 1997, the court appointed Richard L. Sadler as receiver with the power to take charge of the property; insure, maintain, and lease it; collect rent; and pay taxes. The appointment was stayed, however, unless one of the following conditions occurred: (1) Dayton Reavis failed to demonstrate by July 24 that it had insurance on the property; (2) Dayton Reavis failed to pay taxes for the years 1991 and 1992 by July 24; or (3) Cameron Henderson was extradited to the State of Indiana. The order provided that, even if one of the conditions occurred, the court would lift the stay only after notice and a hearing.

## PRE-ARGUMENT MOTION

Rampart filed a pre-argument motion to dismiss the appeal for want of jurisdiction, which we denied. The thrust of the motion was that the order is not final and appealable because it was "conditional," i.e., the receiver could not act until the court determined "after notice and hearing" that one of the conditions had been met.

■ We carefully reviewed the order and determined that it was an "order appointing a receiver." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(1) (Vernon Supp.1998)("A person may appeal from an interlocutory order of a district court, county court at law, or county court that: (1) appoints a receiver or trustee;....."). All of the elements which Rampart was required to prove were determined at the hearing that led to the order from which Dayton Reavis has appealed. All of the terms and conditions of the receivership were set forth in the order. Thus, we concluded that it was an appealable interlocutory order and denied the motion to dismiss the appeal.[1] *Id.*

## IS THIS APPEAL MOOT?

■ Dayton Reavis suggests that the appeal has been rendered moot by the entry of a "final judgment" in the underlying suit. The judgment signed in the underlying suit after a trial on the merits provides that Rampart recover against CHOC on the note, declares that the disputed lien is enforceable as to Dayton Reavis, and awards attorney's fees. The court also denied declaratory and injunctive relief that Dayton Reavis and CHOC sought.

Dayton Reavis has appealed from that judgment in cause number 10–98–007–CV now pending in this court. Thus, the judgment is still subject to modification. Because we may reverse the judgment on the merits and remand the cause for further proceedings, we decline to dismiss this appeal as moot.

## THE RECEIVERSHIP ORDER

Dayton Reavis says the court erred in appointing the receiver in three ways: (1) the receivership and the prior injunction cannot exist at the same time; (2) Rampart failed to prove that it was a creditor; and (3)

the evidence did not show that Rampart was entitled to a receiver.

### STANDARD OF REVIEW

■ Because receivership is an equitable remedy within the sound discretion of the court, an appointment will not be disturbed on appeal unless the record reveals an abuse of discretion. *Abella v. Knight Oil Tools,* 945 S.W.2d 847, 849 (Tex.App.—Houston [1st Dist.] 1997, no writ); *see also Balias v. Balias, Inc.,* 748 S.W.2d 253, 256 (Tex.App.—Houston [14th Dist.] 1988, writ denied).

We reverse for abuse of discretion only when we find the court acted in an unreasonable or arbitrary manner. *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex.1985). Stated somewhat differently, abuse of discretion occurs when a court acts "without reference to any guiding rules and principles." *Id.* at 241–42. A corollary principle is that a court of appeals may not reverse for abuse of discretion merely because it disagrees with the court's decision, if that decision was within the court's discretionary authority. *See Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex. 1991); *Downer,* 701 S.W.2d at 242.

### MUTUALLY EXCLUSIVE REMEDIES

To sustain its first issue, Dayton Reavis relies exclusively on *Jackson v. The Praetorians* for the proposition that valid and existing injunctive relief precludes the appointment of a receiver. *Jackson v. The Praetorians,* 80 S.W.2d 322 (Tex.Civ.App.—Dallas 1935, no writ). In *Jackson,* the Dallas Court held that the injunctive order, although its terms "simply prevented a sale of the real estate" under the deed of trust, "protected [appellants] in the undisturbed possession of the property and in the enjoyment of its revenues and benefits pending the outcome of the litigation." *Id.* at 322. Because the receivership had "ousted" appellants from possession and deprived them

---

1. Cases cited by Rampart include: *Huston v. Federal Deposit Ins. Corp.,* 800 S.W.2d 845, 847 (Tex.1990); *Gossett v. Griffin & Kimbrough,* 107 S.W.2d 1115 (Tex.Civ.App.—San Antonio 1937, writ dism'd w.o.j.); *In re: Marietta State Bank,* 35 S.W.2d 767 (Tex.Civ.App.—Texarkana 1931, no writ). These cases involve the finality of orders entered *during* the pendency of a receiver-

ship; thus, they are not applicable to this interlocutory appeal from the order *appointing* the receiver. They hold that an order that "resolves a discrete issue in connection with any receivership has the same force and effect as any other final adjudication of a court, and thus, is appealable."

of the revenues and benefits, the court set it aside.

■ Here, the injunction obtained by Dayton Reavis prevented Rampart from foreclosing on the property until disputed issues could be resolved. It did not guarantee Dayton Reavis continued possession of or benefits from the property. The receivership, on the other hand, was designed to protect Rampart from adverse actions by Dayton Reavis while the disputed issues were being resolved. We do not find the two remedies to be mutually exclusive. Each recognized the dispute and was designed to preserve the status quo pending a trial. Thus, we disagree with the reasoning of the Dallas Court in *Jackson* and decline to follow it. We overrule Dayton Reavis' first issue.

**STATUTORY BASIS**

Section 64.001 of the Civil Practice and Remedies Code provides in part:

(a) A court of competent jurisdiction may appoint a receiver:

. . .

(2) in an action by a creditor to subject any property or fund to his claim; [or]

. . .

(4) in an action by a mortgagee for the foreclosure of the mortgage and sale of the mortgaged property;

. . .

(b) Under Subsection (a)(1), (2), or (3), the receiver may be appointed on the application of the plaintiff in the action or another party. The party must have a probable interest in or right to the property or fund, and the property or fund must be in danger of being lost, removed, or materially injured.

TEX. CIV. PRAC. & REM.CODE ANN. § 64.001 (Vernon 1997 and Supp.1998).

■ Dayton Reavis asserts that Rampart failed to prove that it was a "creditor." In support of that position, it says because Dayton Reavis is a corporation the court's action in appointing the receiver was also subject to article 7.04 of the Business Corporation Act, which provides:

A. A receiver may be appointed by any court having jurisdiction of the subject matter for specific corporate assets located within the State, whether owned by a domestic or a foreign corporation, which are involved in litigation, whenever circumstances exist deemed by the court to require the appointment of a receiver to conserve such assets and to avoid damage to parties at interest, but only if all other requirements of law are complied with and if other remedies available either at law or in equity are determined by the court to be inadequate and only in the following instances:

(1) In an action by a vendor to vacate a fraudulent purchase of property; or by a creditor to subject any property or fund to his claim; or between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff or any party whose right to or interest in the property or fund or the proceeds thereof is probable, and where it is shown that the property or fund is in danger of being lost, removed, or materially injured.

(2) In an action by a mortgagee for the foreclosure of his mortgage and sale of the mortgaged property, when it appears that the mortgaged property is in danger of being lost, removed, or materially injured, or that the condition of the mortgage has not been performed and that the property is probably insufficient to discharge the mortgage debt.

(3) In any other actions where receivers for specific assets have heretofore been appointed by the usages of the court of equity.

B. The court appointing such receiver shall have and retain exclusive jurisdiction over the specific assets placed in receivership and shall determine the rights of the parties in these assets or their proceeds.

TEX. BUS. CORP. ACT ANN. art. 7.04 (Vernon 1980). With respect to the issues we must decide, these statutes do not conflict. Much of the parties' arguments revolve around

whether Rampart properly proved it was a creditor and had "a probable interest in or right to the property or fund," as these statutes require.[2]

Cameron Henderson testified that he held the office of vice-president of Dayton Reavis and was its sole director. He said the property in question was being leased by Dayton Reavis to BMZ Corporation. Because he believed Dayton Reavis had the property insured, he said he could furnish proof of insurance within a day. He denied that he had been sentenced to prison in the State of Indiana, but exhibits admitted into evidence strongly suggest he is liable for some type of sentence in a criminal proceeding in that state. The documentary evidence further suggests Henderson signed a substantial number of insufficient-funds checks.

Jimmy Carpenter, vice-president of Rampart, testified that Rampart had a "great interest in trying to assert that there is a lien on [the] property," it had a legal or equitable interest in the property, and it was concerned with the condition of the property and its preservation during the suit. Carpenter said companies with which Henderson was involved were engaged in bankruptcy proceedings, assets of those companies had been lost for failure to pay taxes, and at least one of the companies had never filed a federal income tax return.

In response to a question on cross-examination, Carpenter said, "Rampart Capital Corporation was assigned a note and a deed of trust securing the real estate ... in Mexia. So under that provision, we are secured lenders pertaining to that corporation." Later, he described Rampart as "a secured lien holder, that's the interest that Rampart Capital has."

Exhibits admitted into evidence showed that the taxing agencies in Limestone County had obtained a judgment against Dayton Reavis for back taxes for the years 1990 and 1991, which authorized a foreclosure of the property and issuance of an order for its sale.

The record supports findings that Rampart is a creditor, it had a probable interest in or right to the property, and the property was in danger of being lost, removed, or materially injured. Thus, we cannot say the court abused its discretion in appointing a receiver. *Abella*, 945 S.W.2d at 849.

HARMLESSNESS

■ Rampart also says, even if Dayton Reavis' contentions about the failure of its proof at the receivership hearing were true, we should affirm the order because the later trial established that Rampart was a creditor and had a right to look to the property to satisfy its debt. We agree.

New Rule of Appellate Procedure 44.1 prohibits reversal of a civil judgment unless the appellate court "concludes that the error complained of: (1) probably caused the rendition of an improper judgment, . . . ." TEX. R.APP. P. 44.1(a)(1). Based on the judgment later rendered in Rampart's favor, a copy of which is in the record of this appeal and which we will review in due course, we cannot conclude that the receivership order was improper. *See id.* We overrule issues two and three.

We affirm the order appointing the receiver.

---

**2.** Rampart withdrew an earlier request for a judicial foreclosure; thus, it cannot prevail under

64.001(a)(4). TEX. CIV. PRAC. & REM CODE ANN. § 64.001(a)(4) (Vernon Supp.1998).