ACCEPTED
06-15-00014-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
4/23/2015 3:13:11 PM
DEBBIE AUTREY
CLERK

NO. 06-15-00014-CV

IN THE SIXTH COURT OF APPEALS
TEXARKANA, TEXAS

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
4/23/2015 3:13:11 PM
DEBBIE AUTREY
Clerk

WILLIAM H. SCURLOCK,
APPELLANT

V.

JOHN M. HUBBARD,
APPELLEE

ON APPEAL FROM CAUSE NO. 14C1653-102
IN THE 102ND DISTRICT COURT
BOWIE COUNTY, TEXAS

APPELLEE'S BRIEF

COUNSEL FOR APPELLEE JOHN M. HUBBARD:
Brent M. Langdon
State Bar No. 11902250
Email: blangdon@ldatty.com
Kyle B. Davis
State Bar No. 24031995
Email: kdavis@ldatty.com

LANGDON✶DAVIS, L.L.P.
5902 Summerfield, Ste. A
Texarkana, Texas 75505-5547
Tel:   (903) 223-3246
Fax:   (903) 223-5227

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Rule 38.1(a) of the Texas Rules of Appellate Procedure, Appellee lists below the names all parties to the trial court's final judgment or order appealed from together with the names and addresses of all trial and appellate counsel.

*Parties:*

- William H. Scurlock/Defendant/Appellant

- John M. Hubbard, Plaintiff/Appellee

*Trial and Appellate Counsel:*

| Cory J. Floyd<br>Norton & Wood, LLP<br>315 Main Street<br>Texarkana, Texas 75505-1808<br>*Trial and Appellant Counsel*<br>*for William H. Scurlock* | Brent M. Langdon<br>Langdon✶Davis, LLP<br>5902 Summerfield, Ste. A<br>Texarkana, TX 75503<br>*Trial and Appellee Counsel for*<br>*John M. Hubbard* |
|---|---|
| Cammy R. Kennedy<br>Norton & Wood, LLP<br>315 Main Street<br>Texarkana, Texas 75505-1808<br>*Appellant Counsel for*<br>*William H. Scurlock* | Kyle B. Davis<br>Langdon✶Davis, LLP<br>5902 Summerfield, Ste. A<br>Texarkana, TX 75503<br>*Trial and Appellee Counsel for*<br>*John M. Hubbard* |

# TABLE OF CONTENTS

IDENTITY OF PARTIES ..................................................................................... ii

TABLE OF CONTENTS ................................................................................... iii

INDEX OF AUTHORITIES ................................................................................ v

STATEMENT OF THE CASE ............................................................................ 1

STATEMENT OF FACTS .................................................................................. 2

SUMMARY OF THE ARGUMENT ................................................................ 10

    I.     Hubbard Re-urges His Motion to Dismiss and Motion
          To Abate ............................................................................................ 10

    II.    Scurlock's Complaints About The Appointment Of A
          Receiver Have No Merit ...................................................................... 10

    III.   Scurlock's Complaints About The Granting Of A
          Temporary Injunction Have No Merit ................................................ 11

ARGUMENT ................................................................................................... 13

    I.     This Court Should Dismiss Or Abate Scurlock's Appeal ........ 13

    II.    Scurlock Has Waived His Complaints About The
          Receivership ....................................................................................... 14

    III.   The Trial Court Properly Exercised Its Discretion
          In Appointing A Receiver Because Evidence
          Supports Appointment Of A Receiver ............................................... 17

          A.    Appointment of a receiver must be affirmed on
                appeal unless the record reveals a clear abuse of
                discretion ................................................................................. 17

B.    The Texas Business and Organizations Code authorizes the Trial Court to appoint a receiver ............................... 18

C.    Because the evidence supports a receivership, the Trial Court properly appointed a receiver ............................ 20

D.    There is evidence that the managers were deadlocked.... 24

E.    The parties are not required to "attempt lessor remedies" before a receiver can be appointed ................ 25

IV.    The Trial Court Properly Exercised Its Discretion In Granting A Temporary Injunction Because Evidence Supports A Temporary Injunction ............................................. 27

A.    A temporary injunction must be affirmed on appeal unless the record reveals a clear abuse of discretion ...... 27

B.    The Evidence Supports Probable Injury ......................... 28

C.    The Evidence Supports Probable Right Of Recovery ... 29

V.    The Trial Court's Order Properly Requires The Payment of Bonds For The Injunction and Receivership ............................ 31

PRAYER ............................................................................................. 32

CERTIFICATE OF COMPLIANCE ............................................... 33

CERTIFICATE OF SERVICE ......................................................... 34

APPENDIX ......................................................................................... 35

# INDEX OF AUTHORITIES

**Cases**

*Abella v. Knight Oil Tools*, 945 S.W.2d 847, 849
(Tex. App.—Houston [1st Dist.] 1997, no writ)................................. 17

*Bay Fin. Sav. Bank, FSB v. Brown*, 142 S.W.3d 586, 590
(Tex. App.—Texarkana 2004, no pet.) ........................................ 23

*Childre v. Great Sw. Life Ins. Co.*, 700 S.W.2d 284, 288-89
(Tex. App.—Dallas 1985, no writ) ............................................ 32

*Dayton Reavis Corp. v. Rampart Capital Corp.*, 968 S.W.2d 529, 531
(Tex. App.—Waco 1998, pet. dism'd w.o.j.) ................................. 17

*In re Marriage of Davis*, 418 S.W.3d 684, 689
(Tex. App.—Texarkana 2012, no pet.) ...................................... 14, 15

*In re Talco-Bogata Consol. Indep. Sch. Dist. Bond Election*,
994 S.W.2d 343, 345 (Tex. App.—Texarkana 1999, no pet.)..........27, 29, 30

*Johnson v. Barnwell Prod. Co.*, 391 S.W.2d 776, 785
(Tex.Civ.App.—Texarkana 1965, writ ref'd n.r.e.)........................... 15

*Ritchie v. Rupe*, 443 S.W.3d 856, 871 (Tex. 2014) ........................ 20

*Rogers v. Rogers*, 2002 WL 433052 at *1-2
(Tex. App.—Houston [14th Dist.] 2002, no pet.) ......................... 15, 16

**Statutes**

Tex. Bus. Orgs. Code § 11.404. ................10, 14, 17, 18, 19, 20, 22, 24, 25

**Rules**

Tex.R.App. P. 33.1(a)(1).................................................. 15, 16

Tex. R. Civ. Proc. 684 .................................................. 31, 32

Tex. R. Civ. Proc. 695a ................................................................................ 32

## STATEMENT OF THE CASE

While Hubbard generally agrees with Scurlock's Statement of the Case, Hubbard must point out to the Court that because he has not paid the bonds required by the Trial Court's February 3, 2015 Order, the order which Scurlock complains about in his appeal, there is no binding temporary injunction or receivership currently in effect, and therefore, Scurlock's appeal is premature, and the Court lacks jurisdiction to consider his appeal.

## STATEMENT OF FACTS

Hubbard generally concedes Scurlock's characterization of the background facts regarding their business relationship and their co-ownership of two companies, Pecan Point Brewing Co., a Texas Corporation, and Hubbard & Scurlock, LLC, a Texas limited liability company. (*See* Appellant's Brief at 4.) However, Hubbard disagrees that Scurlock properly removed Hubbard as a director of Pecan Point. (*See* Appellant's Brief at 5.) Hubbard also disagrees that Scurlock properly terminated Hubbard's employment. (*Id.*)

Hubbard brought suit against Scurlock because of the disagreements between them and sought a temporary injunction and receivership for Pecan Point. (CR 4-14.) The Trial Court held a hearing on Hubbard's Motion for Temporary Order on January 26, 2015 and received evidence at such hearing. The following evidence is pertinent for this appeal:

Hubbard was "Director 1" and Scurlock was "Director 2" when Pecan Point Brewing Company ("Pecan Point") was incorporated. (CR 41.)

Hubbard is the one with knowledge about the brewery side of the business, and his management of the brewery side was part of the business plan for Pecan Point. (RR 2:24-26.) The parties wanted the brewery to represent Texarkana, so Hubbard designed the brewery equipment, rather

2

than purchasing pre-fabricated equipment. (RR 2:24.) Hubbard wanted the beer for the business to be unique, so he and his father grew their own hops. (RR 2:25-26.) Hubbard's brewing techniques and recipes have been developed over time. (RR 2:59-60.) His recipes are "in his head." (RR 2:59-60.)

Brewing beer is an essential part of the business. (RR 2:71.) The microbrewery side of the restaurant makes Pecan Point unique. (RR 2:25-26; 2:130-133.) Hubbard's beer has made Pecan Point successful in the first months of operation. (RR 2:130-133.) Making new beer with new recipes is important to keep customers returning to the restaurant. (RR 2:69.)

Jason Williams, the restaurant general manager, testified that Pecan Point's microbrewery sets Pecan Point apart from all the other restaurants in town, and that Pecan Point requires beer, which up to this point was brewed by Hubbard. (RR 2:130-133.) The only micro-brewed beer the restaurant has on hand to serve its customers is beer brewed by Hubbard. (RR 2:130-133.) Pecan Point has not brewed any beer since Hubbard left. (RR 2:136.)

Scurlock has limited knowledge about beer brewing from using kits purchased from home brew companies. (RR 2:25.) He has asked Hubbard to teach him how to brew beer and write a detailed explanation of how to brew beer, a process that took Hubbard years to develop. (RR 2:68-69.) When

Scurlock terminated Hubbard as a director in Pecan Point, Scurlock offered to keep Hubbard employed as a brew master. (RR 2:190.)

Scurlock's role in the business was to finish remodeling the building for restaurant. (RR 2:26.) However, the remodeling has yet to be finished. (RR 2:26.) Scurlock arrived late, a couple of hours after opening, on the restaurant's opening day on October 27, 2014. (RR 2:31.) Scurlock also arrived late on October 30, 2014, when the restaurant first opened to the public. (RR 2:31.) Scurlock did not perform much work at the restaurant. (RR 2:36.) Hubbard saw him occasionally speak to customers at their tables and grab a few empty pint glasses. (RR 2:36.) Scurlock was not hands-on. (RR 2:36.) Scurlock was at the restaurant only for a few hours, perhaps 6:00 pm to 8:00 or 8:30 pm. (RR 2:36-37.)

Hubbard was always at the restaurant when it opened at 4:00 pm to help out in any way he could. (RR 2:35-36.) Sometimes Hubbard helped in the kitchen, peeling potatoes or washing dishes, filling in when kitchen staff was absent or late. (RR 2:36.) One time he churned the ice cream by hand so the restaurant could serve ice cream desserts. (RR 2:36.) Hubbard and his fiancée cleaned the beer equipment every day or every couple of days. (RR 2:34.)

Hubbard has not been paid in full for his work, and he does not know if Scurlock has been paid because Scurlock has excluded Hubbard from the books. (RR 2:30-31.)

Jason Williams plays no role in the brewery side of the business. (RR 2:35.) He has a wife and two children; one them is an infant. (RR 2:117.) Pecan Point also employs his wife as an admin and kitchen manager. (RR 2:117-118.)

Scurlock has a bad temper. When he and Hubbard had disagreements, Scurlock threatened, in an angry voice, to buy Hubbard out. (RR 2:38.) Scurlock "threw fits" when they had disagreements. (RR 2:38.) Two days before opening day, in front of the building, Scurlock picked up a 2x4 board and kicked it and screamed. (RR 2:38-39; RR 2:102.) The board nearly hit Hubbard's dad's truck. (RR 2:102.) Scurlock yelled a lot. (RR 2:38-39.) His temper caused Jason Williams to leave a meeting one time. (RR 2:39.) Scurlock also screamed at Hubbard on another occasion and stormed off. (RR 2:103.) Scurlock also yelled at Hubbard and an electrician on another occasion. (RR 2:103-104.) When he screamed, Scurlock would get within a couple of feet in front of Hubbard's face. (RR 2:104.)

5

Scurlock asked Hubbard to leave the business on December 4, 2014. (RR 2:49.) Pecan Point has brewed no beer since Scurlock terminated Hubbard's employment. (RR 2:130-133.)

Scurlock offered to buy Hubbard out of Pecan Point but employ Hubbard as the brewer, but Hubbard was not interested in that arrangement. (RR 2:40-41.)

Scurlock offered to buy Hubbard's interest in the LLC. (RR 2:44.) The LLC agreement allows one member to offer to buy the interest of the other, and the second member has a choice to either accept the first member's offer or buy the first member's interest at the price the first member offered. (RR 2:43-44.)

Hubbard matched Scurlock's offer and offered to buy Scurlock's interest in the LLC for the price that Scurlock offered to Hubbard. (RR 2:47-48.) Scurlock acknowledges that Hubbard rejected Scurlock's offer to purchase Hubbard's interest in the LLC and that Hubbard elected to purchase Scurlock's interest for the price Scurlock offered. (RR 2:192.) However, Scurlock has refused to sell. (RR 2:47-48.)

After Scurlock made his offer, Hubbard decided to stay away from the restaurant for fear that Scurlock would get angry in front of the employees,

which is not beneficial to the business. (RR 2:47.) Hubbard decided that the issue needed to be addressed legally. (RR 2:47.)

Hubbard did not have access to the books and records of the business. (RR 2:51.) Hubbard has no employment other than Pecan Point. (RR 2:51.)

The Trial Court wanted to hear evidence about how the parties dealt with one another in order to make its determination about appointing a receiver and/or granting temporary injunction. (RR 2:55-56.) Based on Scurlock's acts thus far, Hubbard believes that irreparable injury has or will occur unless a temporary injunction is granted and a receiver is appointed. (RR 2:58.) Hubbard does not think anyone else can make beer for the business, and he is concerned about the quality of beer made by anyone other than him; all the recipes are in his memory. (RR 2:58-59.)

Hubbard has not paid in full for his work. (RR 2:66.) He does not know if Scurlock has because Hubbard does not have access to the books. (RR 2:66.) Hubbard wants to be paid back wages if Scurlock received back wages. (RR 2:66.) A receiver would be needed to make back wages. (RR 2:66.)

If Jason Williams continues managing the restaurant, Hubbard continues making the beer, and a receiver maintains the books and handles

the business' finances, there would be no role for Scurlock to play. (RR 2:71-72.)

The work environment would not be productive if both Hubbard and Scurlock are present at the restaurant, as evidenced by the last few days they worked together. (RR 2:76-77.)

Hubbard was not present at any meeting where the shareholders supposedly voted remove him as a director; it would have been an unannounced meeting. (RR 2:77-78.)

Scurlock's wife Linda was Pecan Point's bookkeeper. (RR 2:60.) Even though Hubbard requested to inspect Pecan Point's books and records, Scurlock did not produce them to Hubbard until January 26, 2015, the date of the temporary injunction hearing, and Scurlock produced only the November 2014 books. (RR 2:60.) Scurlock failed to produce the December 2014 books. (RR 2:60.) Linda Scurlock testified that it typically takes her 45 days or longer from the end of a month to prepare reports for that month and admitted that taking 45 days to prepare reports to determine how a business is doing financially is not an acceptable business practice. (RR 2:156 and 2:170.)

Hubbard does not trust Scurlock with Pecan Point's books and wants a receiver to maintain the books until the litigation is resolved. (RR 2:107-

108.) Hubbard also wants a receiver to recreate Pecan Point's books from the start of the business to ensure the records are correct. (RR 2:107-108.)

## SUMMARY OF THE ARGUMENT

Scurlock appeals the Trial Court's February 3, 2015 Order for Issuance of Temporary Injunction and Appointment of Receiver (CR 67-73.)

### I. Hubbard Re-urges His Motion to Dismiss and Motion To Abate

Because Hubbard has not paid the bonds required by the Trial Court's February 3, 2015 Order, there is no binding temporary injunction or receivership currently in effect, and therefore, Scurlock's appeal of that Order is premature. Thus, the Court lacks jurisdiction to consider his appeal and should either dismiss or abate this appeal.

### II. Scurlock's Complaints About The Appointment Of A Receiver Have No Merit

Scurlock makes four complaints about the Trial Court's appointment of a receiver: (1) Hubbard failed to show he is entitled to a receivership under Texas Business and Organizations Code section 11.404 because he did not show that a deadlock existed, and he did not prove oppression; (2) lesser remedies had not been attempted; (3) the Trial Court did not condition the receiver's authority on the posting of appropriate bonds or receiver's qualification; and (4) the Trial Court's Order does not require the receiver to take an oath.

However, because Scurlock never raised these complaints with the Trial Court after it executed the Order, Scurlock has deprived the Trial Court of an opportunity to consider his complaints and revise or amend the Order, or take other action, if the Trial Court determined it appropriate to do so. Because Scurlock did not timely complain to the Trial Court, he has waived his issues for appeal.

Additionally, because the Trial Court has discretion in determining appointment of a receiver for Pecan Point, and there is evidence in the record to support appointment of a receiver, this Court should affirm the Trial Court's appointment of a receiver.

## III. Scurlock's Complaints About The Granting Of A Temporary Injunction Have No Merit

Scurlock makes two complaints about the Trial Court's granting of a temporary injunction: (1) Hubbard failed to show he is entitled to a temporary injunction; and (2) the Trial Court did not condition the injunction on the posting of appropriate bonds.

However, because the Trial Court has discretion in granting a temporary injunction, and there is evidence in the record to support the need for a temporary injunction, this Court should affirm the temporary injunction order.

11

Also, because the Order provides: (1) "Hubbard shall post a corporate bond in his individual capacity in the amount of $100,000 which will fully protect Defendant's rights during pendency of this action"; (2) "Hubbard shall post a corporate bond in his capacity as a shareholder in Pecan Point Brewing Company in the amount of $50,000 which will fully protect Defendant's rights during pendency of this action"; and (3) "Before the issuance of the injunction, Plaintiffs [Hubbard] must post bond as ordered payable to Defendants, conditioned and approved as required by law" (CR 72-73), the Trial Court did condition the injunction on the posting of appropriate bonds, and thus, this Court should affirm the temporary injunction order.

## ARGUMENT

### I. This Court Should Dismiss Or Abate Scurlock's Appeal

Because Hubbard has not paid the bonds required by the Trial Court's February 3, 2015 Order, there is no binding temporary injunction or receivership currently in effect, and therefore, Scurlock's appeal of that Order is premature, and the Court lacks jurisdiction to consider his appeal.

Under the Trial Court's February 3, 2015 Order, no binding temporary injunction or receivership is effective unless and until Hubbard pays the requisite bonds. Hubbard has not paid the bonds, and he has made no attempt to enforce the February 3, 2015 Order. (See Appendix 3, Affidavit of Hubbard.) Because Hubbard wants a temporary injunction and receivership in place and because he cannot pay the bonds required by the Trial Court, Hubbard has asked the Trial Court to consider reducing the bond requirements and amending its Order accordingly. (*See* CR 76-79.) The Trial Court is scheduled to consider Hubbard's Motion to Amend Order Setting Bond on April 27, 2015. (See Appendix 3, Affidavit of Hubbard.)

If the Trial Court amends its Order, and Hubbard is able to pay the bonds, then the issues in Scurlock's appeal could change or Scurlock's appeal may become moot in its entirety. Because Hubbard has properly and timely raised his complaints about the Order with the Trial Court, this Court

13

should dismiss or abate this appeal to give the Trial Court an opportunity to consider Hubbard's complaints and amend its own order. For these reasons, Hubbard re-urges his Motion to Dismiss and Motion to Abate.

## II. Scurlock Has Waived His Complaints About The Receivership

Scurlock makes four complaints about the Trial Court's appointment of a receiver: (1) Hubbard failed to show he is entitled to a receivership under Texas Business and Organizations Code section 11.404 because he did not show that a deadlock existed, and he did not prove oppression; (2) lesser remedies had not been attempted; (3) the Trial Court did not condition the receiver's authority on the posting of appropriate bonds; and (4) the Trial Court's Order does not require the receiver to take an oath. However, Scurlock cannot raise any of these complaints in this appeal.

Because Scurlock did not raise these complaints with the Trial Court, depriving the Trial Court of an opportunity to address his complaints, Scurlock has failed to preserve his complaints for appeal. As this Court has recently held in the context of interlocutory appeals of receivership appointments, "[a]s a prerequisite to presenting a complaint for appellate review, the record must show that: (1) the complaint was made to the trial court by a timely request, objection, or motion...." *In re Marriage of Davis*, 418 S.W.3d 684, 689 (Tex. App.—Texarkana 2012, no pet.) (quoting

14

Tex.R.App. P. 33.1(a)(1)). If a party does not make a timely complaint about the appointment of a receiver to the trial court, that party fails to preserve his issue for appellate review. *See In re Marriage of Davis*, 418 S.W.3d at 689 (determining that party waives for appellate review any challenge to a trial court's appointment of receiver without first requiring receiver to take oath and any issue as to whether receiver was proven to be qualified under receivership statute, if he does not timely complain to the trial court).

Other courts agree with this Court's position in regards to the payment of bonds to commence a receivership. If a party complains that an order appointing a receiver is defective because it fails to require the payment of a bond, that party must timely complain or object to the absence of a bond in the trial court or he waives such complaint on appeal. *Rogers v. Rogers*, 2002 WL 433052 at *1-2 (Tex. App.—Houston [14th Dist.] 2002, no pet.). The appointment of a receiver without a bond does not render the appointment void, merely voidable. *Id.* (citing among others, *Johnson v. Barnwell Prod. Co.*, 391 S.W.2d 776, 785 (Tex.Civ.App.—Texarkana 1965, writ ref'd n.r.e.)). Therefore, a party's failure to voice a timely objection waives the complaint. *Rogers*, 2002 WL 433052 at *2.

To preserve his complaint for appellate review, it is incumbent upon the complaining party to present the trial court with a timely request,

15

objection, or motion, stating the specific grounds for the ruling if the grounds were not apparent from the context, and to obtain a ruling on the request, objection, or motion. *Id.* (citing Tex.R.App. P. 33.1). If the complaining party fails to bring the matter to the attention of the trial court, he may not raise the complaint for the first time on appeal. *Id.* (citations omitted).

Because Scurlock failed to complain to the Trial Court about the February 3, 2015 Order, this Court should overrule all points raised by Scurlock in this interlocutory appeal. Even though Scurlock acknowledged the necessity to file a motion to vacate or motion for reconsideration several times (*see* R.R. 3:58, 3:64, and 3:78), he did not file either before asserting this interlocutory appeal. While Hubbard filed a Motion to Amend Order Setting Bond to complain about the Trial Court's February 3, 2015 Order (*see* CR 76-79), Scurlock filed no complaints with the Trial Court about its Order. Rather, Scurlock went straight to this interlocutory appeal, depriving the Trial Court of knowing his specific complaints and the reasons for those complaints, and an opportunity to address those complaints.

Regardless of Scurlock's waiver, this Court should affirm the Trial Court's appointment of receiver for Pecan Point because Hubbard has shown

he is entitled to a receivership under Texas Business and Organizations Code section 11.404.

## III. The Trial Court Properly Exercised Its Discretion In Appointing A Receiver Because Evidence Supports Appointment Of A Receiver

### A. Appointment of a receiver must be affirmed on appeal unless the record reveals a clear abuse of discretion

The appointment of a receiver, either as authorized by statute or equity, will not be disturbed on appeal unless the record reveals a clear abuse of discretion. *Abella v. Knight Oil Tools*, 945 S.W.2d 847, 849 (Tex. App.—Houston [1st Dist.] 1997, no writ). The appellate court will not substitute its judgment for that of the trial court, but will determine whether the trial court's decision was either arbitrary or unreasonable. *Id.* Stated somewhat differently, abuse of discretion occurs when a court acts "without reference to any guiding rules and principles." *Dayton Reavis Corp. v. Rampart Capital Corp.*, 968 S.W.2d 529, 531 (Tex. App.—Waco 1998, pet. dism'd w.o.j.). A corollary principle is that a court of appeals may not reverse for abuse of discretion merely because it disagrees with the court's decision, if that decision was within the court's discretionary authority. *Id.*

**B.** **The Texas Business and Organizations Code authorizes the Trial Court to appoint a receiver**

Here, Texas Business and Organizations Code section 11.404 is the rule that guides appointment of a receiver for Pecan Point. Section 11.404 provides, in relevant part:

§ 11.404. Appointment of Receiver to Rehabilitate Domestic Entity

(a)    Subject to Subsection (b), a court that has jurisdiction over the property and business of a domestic entity under Section 11.402(b) may appoint a receiver for the entity's property and business if:

(1)    in an action by an owner or member of the domestic entity, it is established that:

(A)    the entity is insolvent or in imminent danger of insolvency;

(B)    the governing persons of the entity are deadlocked in the management of the entity's affairs, the owners or members of the entity are unable to break the deadlock, and irreparable injury to the entity is being suffered or is threatened because of the deadlock;

(C)    the actions of the governing persons of the entity are illegal, oppressive, or fraudulent;

(D)    the property of the entity is being misapplied or wasted; _**or**_

(E)    with respect to a for-profit corporation, the shareholders of the entity are deadlocked in voting power and have failed, for a period of at least two years, to elect successors to the governing persons

18

of the entity whose terms have expired or would have expired on the election and qualification of their successors;

Tex. Bus. Orgs. Code § 11.404 (emphasis added).

The statute permits the Trial Court to appoint a receiver to manage Pecan Point **if any one of the five requirements is satisfied**. Here, the Trial Court concluded that (B), (C), and (D) are satisfied. Specifically, the Trial Court made these conclusions:

- there is evidence to support the appointment of a receiver because the governing persons of Pecan Point are deadlocked in the management of Pecan Point's affairs, they are unable to break the deadlock, and irreparable injury to Pecan Point is threatened because of the deadlock;

- there is evidence that the actions of the governing person, Scurlock as the majority shareholder, is oppressive; and

- appointment of receiver is necessary to conserve Pecan Point's property and business and to avoid damage to interested parties, such as other shareholders who have invested in Pecan Point, that without a receiver, the success, momentum, and good will that Pecan Point has acquired will devalue the interests of Pecan Point's shareholders.

19

*See* Trial Court's February 3, 2015 Order. (CR 67-72.)

Additionally, the Trial Court determined that all other requirements of the law are complied with and that other available legal and equitable remedies are inadequate. *Id.*

### C. Because the evidence supports a receivership, the Trial Court properly appointed a receiver

The Trial Court had discretion to evaluate the evidence and determine whether Scurlock's action were oppressive under section 11.404. A corporation's directors or managers engage in "oppressive" actions under section 11.404 when they abuse their authority over the corporation with the intent to harm the interests of one or more of the shareholders, in a manner that does not comport with the honest exercise of their business judgment, and by doing so create a serious risk of harm to the corporation. *Ritchie v. Rupe*, 443 S.W.3d 856, 871 (Tex. 2014).

Here, the Trial Court's had discretion to weigh the evidence to determine if Scurlock, as the managing shareholder, abused his authority over Pecan Point with the intent to harm Hubbard's interests as a shareholder, in a manner that is not consistent with the exercise of business judgment, and by doing so creates serious risk of harm to Pecan Point. The Trial Court heard the following evidence:

20

- Hubbard is the one with knowledge about the brewery side of the business, and his management of the brewery side was part of the business plan for Pecan Point. (RR 2:24-26.) Hubbard's brewing techniques and recipes have been developed over time. (RR 2:59-60.) His recipes are "in his head." (RR 2:59-60.)

- The microbrewery side of the restaurant makes Pecan Point unique. (RR 2:25-26; 2:130-133.) Brewing beer is an essential part of the business. (RR 2:71.) Making new beer with new recipes is important to keep customers returning to the restaurant. (RR 2:69.)

- Hubbard's beer has made Pecan Point successful in the first months of operation. (RR 2:130-133.) Hubbard's beer is so good that Scurlock has asked Hubbard to teach him how to brew beer and write a detailed explanation of how to brew beer, which is a process that took Hubbard years to develop, and offered keep Hubbard employed as a brew master. (RR 2:68-69; 2:190.)

- Scurlock has limited knowledge about brewing from using kits purchased from home brew companies. (RR 2:25.)

21

- Scurlock has a bad temper. Scurlock screamed at Hubbard and kicked things whenever the two had disagreements over business matters. (RR 2: 38-39; 2:102-104.) Two days before opening day, in front of the building, Scurlock picked up a 2x4 board and kicked it and screamed. (RR 2:38-39; RR 2:102.) Scurlock's temper caused Jason Williams, the restaurant general manager, to leave a meeting one time. (RR 2:39.)

Based on this evidence, the Trial Court was well within its discretion to conclude that Scurlock abused his management position to the detriment of Hubbard, the other shareholders, and Pecan Point, as well as conclude that irreparable harm would come to Hubbard and Pecan Point (that is, Pecan Point will lose customers and its foothold in the restaurant industry in Texarkana) if a receiver is not appointed to manage the business and books, to warrant the appointment of a receiver under section 11.404.

It was within the Trial Court's discretion to determine if Hubbard's service as Pecan Point's brew master benefited Pecan Point. Scurlock claims that Hubbard was not a good brew master, but Scurlock contradicts himself because he asked Hubbard to teach him how to make beer, asked for Hubbard's recipes, and offered to keep employing Hubbard as Pecan Point's

22

brew master. (RR 2:68-69; 2:190.) Consideration of Scurlock's self-contradictions is the Trial Court's province.

The amount of weight given to Jason Williams' testimony is also within the discretion of the Trial Court. In his brief, Scurlock puts a good deal of weight on the testimony of Mr. Williams, Pecan Point's general restaurant manager and employee. However, the Trial Court, as the finder of fact at the hearing, could have discounted Mr. Williams' testimony and opinions because Scurlock was present in the courtroom during his testimony, and it is difficult for an employee to testify negatively about his boss, who gives him and his wife (Pecan Point also employs Jason Williams' wife, RR 2:117-118) paychecks to support their family. The Trial Court could have also determined that Mr. Williams' testimony about beer quality and delay in beer production due to Hubbard's shortcomings was speculative, since Mr. Williams did not play a role in beer production. (RR 2:35.)

Unchallenged findings of fact in an accelerated appeal are binding on the court of appeals "unless the contrary is established as a matter of law, or if there is no evidence to support the finding." *Bay Fin. Sav. Bank, FSB v. Brown*, 142 S.W.3d 586, 590 (Tex. App.—Texarkana 2004, no pet.) (addressing an accelerated appeal from a temporary injunction). Because

23

there is some evidence to support a receivership appointment in this present case, the Trial Court's injunction order must be affirmed.

Because section 11.404 permits the Trial Court to appoint a receiver to manage Pecan Point if any one of the five requirements is satisfied, the inquiry into the propriety of the receiver appointment can end here. Thus, Scurlock's claim that no deadlock exists at Pecan Point is inconsequential to the analysis, even if it is correct (which it is not).

Additionally, the Trial Court could have concluded that Linda Scurlock was not an adequate bookkeeper for Pecan Point and that a receiver is better to manage the books, based on her admission that it takes her 45 days to prepare reports for any given month, which makes it difficult to timely evaluate Pecan Point's financial well-being. Ms. Scurlock admitted that taking 45 days to prepare reports for Pecan Point is not an acceptable business practice. (RR 2:156 and 2:170.)

**D.     There is evidence that the managers were deadlocked**

There is no dispute that Scurlock and Hubbard were deadlocked in the management of Pecan Point; Scurlock wanted Hubbard to leave the restaurant, while Hubbard wanted to continue brewing the beer that had made the restaurant successful. There is no dispute that the two could not work together peacefully.

24

Scurlock claims there was no deadlock among the managers because he obtained the votes to remove Hubbard as a director of Pecan Point, putting Scurlock in charge, giving Scurlock unfettered power. However, Scurlock did not notify Hubbard of the vote, depriving Hubbard of an opportunity to defend himself. The Trial Court could have determined that Scurlock's secret removal of Hubbard as a director was part of Scurlock's underhanded oppression of Hubbard as a minority shareholder and found a deadlock existed.

**E.    The parties are not required to "attempt lessor remedies" before a receiver can be appointed**

Scurlock's contention that the Trial Court erred in appointing a receiver because "lessor remedies not attempted" (see Appellant's Brief at 31) is not a correct statement of the law because Texas Business and Organizations Code section 11.404(b)(3) does not require the parties to have actually attempted lessor remedies before a trial court can appoint a receiver. Section 11.404(b)(3) provides:

§ 11.404. Appointment of Receiver to Rehabilitate Domestic Entity

(b)    A court may appoint a receiver under Subsection (a) only if:

  (3)    the court determines that all other available legal and equitable remedies, including the appointment of a receiver for specific property of the domestic entity under Section 11.402(a), are inadequate.

25

Tex. Bus. Orgs. Code § 11.404.

The statute does not require the parties to actually attempt lessor remedies before a receiver can be appointed; the trial court's consideration of lessor remedies is sufficient. Scurlock argues that the Trial Court did not consider any alternate remedies before appointing a receiver; however, he cannot point to anything in the record to demonstrate his theory.

The Trial Court could have determined, after considering the evidence and arguments of counsel, that there was no chance of reconciliation or settlement between the parties. The evidence shows that Scurlock screams and yells at Hubbard. The evidence shows that Scurlock terminated Hubbard's employment and obtained votes to remove Hubbard as a director of Pecan Point behind Hubbard's back, without any notice whatsoever to Hubbard.

The Trial Court could have concluded from Scurlock's actions and disrespectful attitude towards Hubbard that no lessor remedies would be sufficient. The parties, in fact, cannot settle their differences, as evidenced by the failure of a mediation occurring on March 24, 2015. (See Appendix 3, Affidavit of Hubbard.) It seems that the only way this case will be resolved is through a trial on the merits and possibly exhaustion of appeals. Thus, the

Trial Court was well within its power to appoint a receiver during the pendency of this suit.

## IV. The Trial Court Properly Exercised Its Discretion In Granting A Temporary Injunction Because Evidence Supports A Temporary Injunction

### A. A temporary injunction must be affirmed on appeal unless the record reveals a clear abuse of discretion

Appellate review of an order granting a temporary injunction is strictly limited to whether the trial court has clearly abused its discretion. *In re Talco-Bogata Consol. Indep. Sch. Dist. Bond Election*, 994 S.W.2d 343, 345 (Tex. App.—Texarkana 1999, no pet.) (citations omitted). An abuse of discretion occurs when the trial court acts without reference to any guiding rules and principles. *Id.* The appellate court will not substitute its judgment for that of the trial court, but must only determine whether the action was so arbitrary as to exceed the bounds of reasonable discretion. *Id.* The appellate court will draw all legitimate inferences from the evidence in a manner most favorable to the trial court's judgment. *Id.* A trial court does not abuse its discretion when it bases its decision on conflicting evidence. *Id.*

To obtain a temporary injunction, the applicant need demonstrate only a probable injury and a probable right of recovery. *Id.* One establishes a probable right to recovery by alleging a cause of action and presenting

evidence that tends to sustain it. *Id.* However, he is not required to establish that he will ultimately prevail at trial. *Id.*

## B. The Evidence Supports Probable Injury

Here, the Trial Court made the following findings of fact:

- Plaintiffs [Hubbard, individually and as ..] have a cause of action for declaratory judgment, breach of fiduciary duty, breach of contract, demand for books and records, applications for temporary restraining order and temporary injunction and appointment of receiver against the Defendant [Scurlock].

- Plaintiffs have a probable right of recovery against the Defendant upon a trial on the merits of this case.

- The Court finds that Plaintiffs have demonstrated a probable and imminent harm or loss to Plaintiffs to an extent that unless this restraint as outlined below is not ordered immediately Plaintiffs will suffer irreparable injury for which there is neither other legal remedy nor adequate measure of damages by any certain pecuniary standard. (CR 67 – 68).

On page 43 of Appellant's Brief, Scurlock's only argument that there is no evidence of probable harm to Pecan Point is because Hubbard's

concern about lack of beer does not demonstrate probable injury because it is only a fear.

However, Jason Williams confirmed Hubbard's fear that no beer has been brewed since Hubbard's employment was terminated. (RR 2:130-133.) The fact that no beer is being brewed at Pecan Point, and the fact that Pecan Point's microbrewery is what sets Pecan Point apart from the numerous other restaurants in Texarkana and gives it the success it has enjoyed, supports the Trial Court's conclusion that there is probable harm to both Hubbard and Pecan Point if Scurlock continues to manage Pecan Point and exclude Hubbard from brewing beer.

The Trial Court's conclusion of probable injury and irreparable harm is further supported by Hubbard's testimony about Scurlock's temper and behavior of yelling, screaming, and kicking things, the impasse between he and Scurlock, and the fact they cannot work together anymore.

## C. The Evidence Supports Probable Right Of Recovery

As stated above, Hubbard establishes a probable right to recovery by alleging a cause of action and presenting evidence that tends to sustain it. *In re Talco-Bogata Consol. Indep. Sch. Dist. Bond Election*, 994 S.W.2d at 345. He is not required to establish that he will ultimately prevail at trial. *Id.*

29

In his brief, Scurlock's argues that "Plaintiff failed to plead **and prove** a probable right of recovery" (page 47, emphasis added) and claims that "no breach of fiduciary duty *was* **proven**" (page 48, emphasis added). However, Hubbard does is not required to **prove** any of his causes of action in order to obtain a temporary injunction; he needs to only present some evidence tending to support them. *In re Talco-Bogata Consol. Indep. Sch. Dist. Bond Election*, 994 S.W.2d at 345

Scurlock acknowledges on page 48 of his brief that he owes a fiduciary duty to Pecan Point. However, he claims there is no evidence he breached that duty by terminating Hubbard because there is no evidence that Hubbard is good at brewing beer. However, Pecan Point opened for business serving Hubbard's beer and has been successful with Hubbard's beer. In fact, the beer Hubbard brewed is so good that Scurlock wants Hubbard's recipes, wants Hubbard to teach him how to brew beer, and offered to continue employing Hubbard as Pecan Point's brew master after removing him as a director. (RR 2:68-69; 2:190.) Scurlock cannot brew beer as well as Hubbard can, even if Scurlock had Hubbard's recipes. (RR 2:84.) This evidence tends to support Hubbard's claim that Scurlock breached his fiduciary duty to Pecan Point by terminating Pecan Point's founder who had the idea in the first place and whose beer launched Pecan Point's success.

Scurlock claims there is no evidence Hubbard had an employment contract because Hubbard testified he did not have one. However, after hearing evidence about Hubbard's hard work on the brewery and at the restaurant (which he has not even been fully compensated for), his partnership with Scurlock, and the way Scurlock has treated him, the Trial Court could have concluded that there is some evidence that Hubbard is entitled to work at Pecan Point.

Additionally, on a related note, the Trial Court could have determined that Hubbard has a probable right of recovery under the impasse-take-or-pay provision in the LLC agreement, which gives Hubbard an interest in the real property occupied by Pecan Point's restaurant, for which Pecan Point pays no rent.

## V. The Trial Court's Order Properly Requires The Payment of Bonds For The Injunction and Receivership

The Trial Court complied with Texas Rule of Civil Procedure 684 to grant a temporary injunction for Hubbard because it required Hubbard to post "a corporate bond in his individual capacity in the amount of $100,000 which will fully protect Defendant's rights during pendency of this action" as well as "a corporate bond in his capacity as a shareholder in Pecan Point

Brewing Company in the amount of $50,000 which will fully protect Defendant's rights during pendency of this action." (CR 72.)

The payment of a single bond can satisfy both Texas Rule of Civil Procedure 695a to appoint a receiver and Texas Rule of Civil Procedure 684 to grant a temporary injunction. *See Childre v. Great Sw. Life Ins. Co.*, 700 S.W.2d 284, 288-89 (Tex. App.—Dallas 1985, no writ) (affirming trial court order appointing receivership and granting temporary injunction when order provided that the payment of a single bond was intended to satisfy Rules 684 and 695a).

The Trial Court Order also specifically conditioned the injunction on Hubbard's payment of the bonds, by providing that "before the issuance of the injunction, Plaintiffs must post bond as ordered payable to Defendants, conditioned and approved as required by law." (CR 73.)

Accordingly, the Trial Court's February 3, 2015 Order complies with all the requirements for a temporary injunction order and must be affirmed.

## PRAYER

Hubbard prays that this Court affirms the Trial Court's February 3, 2015 Order appointing a receiver and granting a temporary injunction.

RESPECTFULLY SUBMITTED,

LANGDON✶DAVIS, L.L.P.
5902 Summerfield, Ste. A
Texarkana, Texas 75505-5547
Tel: (903) 223-3246
Fax: (903) 223-5227

By: /s/Brent M. Langdon
Brent M. Langdon
State Bar No. 11902250
Email: blangdon@ldatty.com
Kyle B. Davis
State Bar No. 24031995
Email: kdavis@ldatty.com

*Attorneys for Appellee John M. Hubbard*

## CERTIFICATE OF COMPLIANCE

I certify that I drafted Appellee's Brief using Microsoft Word using Times New Roman 14-point font and that the Brief contains 6573 words.

/s/ Brent M. Langdon
Brent M. Langdon

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of April, 2015, a true and correct copy of the above and foregoing brief has been forwarded via the court's electronic filing system to all counsel/parties of record listed below and to the Trial Judge via First Class U.S. Mail:

**Via E-Service**
Cory J. Floyd
Cammy R. Kennedy
Norton & Wood, LLP
315 Main Street
P.O. Box 1808
Texarkana, Texas 75505-1808
*Attorneys for Appellant William H. Scurlock*

**Via First-Class Mail**
Honorable Bobby Lockhart
Bowie County District Court
102nd Judicial District
Bi-State Justice Building
100 North State Line, Box 10
Texarkana, Texas 75501

/s/ Brent M. Langdon
Brent M. Langdon

# IN THE SIXTH COURT OF APPEALS
## TEXARKANA, TEXAS

---

## WILLIAM H. SCURLOCK,
### APPELLANT

## V.

## JOHN M. HUBBARD,
### APPELLEE

---

## ON APPEAL FROM CAUSE NO. 14C1653-102
## IN THE 102ND DISTRICT COURT
## BOWIE COUNTY, TEXAS

---

## APPELLEE'S INDEX

---

ITEM 1    Texas Business Organizations Code § 11.404

ITEM 2    Texas Rules of Appeal, P. 33.1(a)(1)

ITEM 3    Affidavit of John M. Hubbard

ITEM 4    *Rogers v. Rogers*, 2002 WL 433052
          (Tex. App.—Houston [14th Dist.] 2002, no pet.)

ITEM 5    Texas Rules of Civil Procedure, Rule 684

ITEM 6    Texas Rules of Civil Procedure, Rule 695a